**Janet Hilliard Harris KIRBY, Appellant,**

v.

**Joanie Harris CHAPMAN, Jack Harris and Joanne Harris, and the Honorable Randy Catterton, Appellees.**

No. 02–94–225–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 29, 1996.

Rehearing Overruled April 11, 1996.

Linda S. Aland, P.C., Dallas, for appellant.

Chester G. Ball, Ball, Landrith & Kulesz, P.C., Arlington, Tim Curry, Criminal District Attorney, Ann Diamond, Assistant District Attorney, Fort Worth, James A. Stephenson, Bedford, for appellees.

Before CAYCE, C.J., and DAY and DAUPHINOT, JJ.

## OPINION

DAY, Justice.

This is a child custody case concerning the minor child Matthan Brent Harris. Appellant Janet Kirby, Brent's natural mother, appeals from a custody modification order removing her as sole managing conservator and naming appellees Joanie Chapman and Jack and Joanne Harris as joint managing conservators. In ten points of error, Kirby complains that the trial court lacked subject matter jurisdiction and erred in other different respects; that the trial judge, appellee Hon. Randy Catterton, should have recused himself; and, that the assigned judge who heard the recusal motion erred in several different respects.

For the reasons below, we affirm the judgment of the trial court.

## THE PROCEEDINGS BELOW

Janet Kirby's oldest child is Blake Hilliard, who was born during Kirby's previous marriage to Jim Hilliard. Kirby married Grady Harris in 1986, but they separated shortly after Kirby became pregnant with her sec-ond son, Brent Harris, and the couple divorced in 1987. Kirby then subsequently married Julian Hernandez, and that marriage produced one child, Brian Hernandez. Grady Harris also remarried to appellee Joanie Harris, and Grady Harris, Jr. was the product of that marriage. Grady Harris, Sr. was killed in an automobile accident on October 11, 1989. Joanie Harris subsequently married Lee Chapman. Appellees Jack and Joanne Harris are the parents of Grady Harris, Sr. and Brent's grandparents.

The divorce of Kirby and Grady Harris was heard in the 231st District Court in Tarrant County on June 16, 1987, and the decree was signed by Judge Maryellen Hicks, the presiding judge of the 231st District Court at that time. The later divorce action between Janet Kirby and Julian Hernandez was heard on June 28, 1991 in the 325th District Court and the decree was signed by the 325th's presiding judge, Judge Mary Sean O'Reilly. Several motions to modify in suits affecting the parent-child relationship were filed by both Kirby and Grady Harris in the 231st District Court between 1987 and 1989. After Grady, Sr.'s death, a motion in intervention was filed in the 231st District Court on October 30, 1989 by Jack and Joanne Harris and Joanie Chapman (then Joanie Harris), seeking possessory conservatorship of Brent. The order on this motion was signed on June 28, 1991 by the presiding judge of the 325th District Court. The only reference in the record relating to this change of courts is a docket entry on February 6, 1991 saying, "Case transferred/assigned to 325th District Court, the Honorable Mary Sean O'Reilly, Presiding, by agreement of both lawyers & judges. [signed] Mary W. Hicks."

Judge Hicks was appointed to the Court of Appeals by Governor Ann Richards shortly before January 1993. State Senator Chris Harris, the brother of Grady Harris and Brent's uncle, supported the nomination of Randy Catterton to fill the vacancy in the 231st District Court. Senator Harris testified that, in his view, there was an unprecedented show of support for Randy Catterton's appointment by the members of the Tarrant County family law bar. Governor

Richards did appoint Randy Catterton as Presiding Judge for the 231st District Court.

On March 4, 1994, Janet Kirby filed in the 325th District Court a motion to modify and a show cause order. A motion for continuance was filed by Jack and Joanne Harris on March 8, 1994. The record indicates that also on March 8, 1994, a docket entry was made, initialled by Judge O'Reilly, the presiding judge of the 325th District Court, that reads, "Case assigned back to the 231st District Ct.; hearing on 3–11–94 set on 231st District Ct. docket; attys. of record notified by 325th Co-ordinator this date. MSO'R". The Harrises and Joanie Chapman filed an answer and counter-motion to modify on March 22, 1994. Also on March 22, 1994, Judge Catterton signed an order transferring the action back to the 231st District Court.

The case has proceeded in the 231st District Court. Kirby waived her right to a jury trial and proceeded with a bench trial before Judge Catterton. The trial commenced on April 12, 1994, and on June 7, 1994, Judge Catterton signed an order removing Janet Kirby as sole managing conservator and making the Harrises and Joanie Chapman the joint managing conservators of Brent. The court's findings of fact and conclusions of law were signed on July 7, 1994.

In her motion for new trial, filed on July 6, 1994, Kirby brought to Judge Catterton's attention that she learned of Senator Harris' involvement with Judge Catterton's appointment and that had she been made aware of this before the trial, she would have filed a motion to recuse. On July 25, 1994, Judge Catterton viewed the accusations included in the motion for new trial as a motion to recuse and did not hear the merits of the new trial motion, but instead allowed Kirby one week to cure the formal deficiencies and to file a formal Motion to Recuse. A formal motion to recuse was filed on July 28, 1994, and a hearing was held before the Hon. Robert P. Brotherton on August 26, 1994. Judge Brotherton denied the motion to recuse, and

he signed findings of fact and conclusions of law from the recusal hearing on September 20, 1994. Kirby filed a "Request for Deletion, Amendment, and Additional Findings of Fact and Conclusions of Law" on September 29, 1994. Judge Brotherton denied Kirby's request on October 25, 1994.

## THE SUBJECT MATTER JURISDICTION CLAIM

In point of error one, Kirby argues that the trial court, the 231st District Court, lacked subject matter jurisdiction when it rendered the judgment removing Kirby as sole managing conservator and making the Harrises and Joanie Chapman the joint managing conservators of Brent. The basis of Kirby's argument is that the 325th District Court, and not the 231st District Court, was the proper court of continuing jurisdiction.

The version of the Texas Family Code in effect at the relevant times of the present case provided in pertinent part:

### Modification of Order

A court order or the portion of a decree that provides for the support of a child or the appointment of a conservator or that sets the terms and conditions of conservatorship for, support for, or access to a child may be modified only by the filing of a motion in the court having continuing, exclusive jurisdiction of the suit affecting the parent-child relationship as provided by Section 11.05 of this code. Any party affected by the order or the portion of the decree to be modified may file the motion.

TEX.FAM.CODE ANN. § 14.08(a) (Vernon 1986).[1] The original divorce decree between Grady Harris and Kirby was entered in the 231st District Court. Original continuing jurisdiction began, therefore, with that court.

 The Family Code further provided:

---

1. Section 1 of Acts 1995, 74th Leg., R.S., ch. 20 reenacted Title 2 and added Title 5 of the Family Code, effective April 20, 1995. Section 2(1) of the Act repealed Title 2 of the Family Code, as

that title existed before the effective date of the Act. The former section 14.08(a) is now found at section 156.002.

Continuing Jurisdiction

[W]hen a court acquires jurisdiction of a suit affecting the parent-child relationship, that court retains continuing, exclusive jurisdiction of all parties and matters provided for under this subtitle in connection with the child. *No other court of this state has jurisdiction of a suit affecting the parent-child relationship with regard to that child except on transfer as provided in Section 11.06 or 17.06 of this code.*

TEX.FAM.CODE ANN. § 11.05(a) (Vernon 1986) (emphasis added).[2] It is clear, then, that the Legislature intended the transfer procedures provided by the Family Code in sections 11.06 or 17.06 to be the only mechanisms for the proper transfer of suits affecting the parent-child relationship.[3] *Johnson v. Pettigrew,* 786 S.W.2d 45, 47–48 (Tex.App.—Dallas 1990, no writ). We also agree with Justice Enoch's analysis in *Johnson* that the exclusive transfer provisions provided in the Family Code negate the ability to transfer cases freely between courts in the same county. *Id.* The necessary question becomes, then, was the present cause properly transferred to the 325th District Court as provided for by section 11.06 of the Code.

█ The only provision of section 11.06 that potentially applies to the present case is subsection (d), which provides:

Transfer of Proceedings Within the State

For the convenience of the parties and witnesses and in the interest of justice, the court, on the timely motion of any party, may transfer the proceeding to a proper court in any other county in the state.

TEX.FAM.CODE ANN. § 11.06(d) (Vernon 1986).[4] This section requires a timely motion by any party to the suit to transfer the proceedings. We hold that, absent a motion from a party and an order of transfer to the 325th District Court, the 231st District Court retained continuing, exclusive jurisdiction.

The Texas Supreme Court came to the same conclusion in *Alexander v. Russell,* a case with many similarities. There, as here, the judge of the 243rd District Court disqualified himself and transferred the case to the 327th District Court; however, the supreme court held that the 243rd District Court retained jurisdiction because the attempted transfer was not for an authorized reason under section 11.06. 699 S.W.2d 209, 210 (Tex.1985). The Dallas Court of Appeals came to the same conclusion in *Johnson,* where the court noted the absence of a motion by a party and an order of transfer. *Johnson,* 786 S.W.2d at 48.

In the present case, regardless of the docket entry made by Judge Hicks on February 6, 1991 stating that the case was transferred to the 325th District Court by agreement of the parties and judges, there is nothing in the record showing that a motion was made by any party to transfer the case for an authorized reason under section 11.06. Also, there is no order from the 231st District Court transferring the case to the 325th District Court. Thus, we find that the 231st District Court retained jurisdiction because the attempted transfer was not for a reason authorized by the exclusive provisions of the Family Code.

Because the 231st District Court never lost its jurisdiction of the cause, Judge Catterton's subsequent retransfer of the case back to his court was unnecessary, although it did memorialize the intention of the 231st District Court to exercise its jurisdiction.

█ Accordingly, we also hold that, because the record does not show that the court of continuing jurisdiction was actually the court that exercised jurisdiction regarding the modification where the Harrises and Joanie Chapman sought possessory conservatorship of Brent, the modification entered by the 325th District Court was a void order as a matter of law and is deemed to have never existed. *Urbish v. 127th Judicial Dist.*

---

2. The former section 11.05(a) is now encompassed in sections 155.001 and 155.002 of the Family Code.

3. Section 17.06 concerns suits by a governmental entity and has no application to the present case.

4. The former section 11.06(d) is now encompassed in section 155.202 of the Family Code.

**908**

*Court,* 708 S.W.2d 429, 431 (Tex.1986); *Johnson,* 786 S.W.2d at 46; *Ex parte Bowers,* 671 S.W.2d 931, 935 (Tex.App.—Amarillo 1984, no writ).

Therefore, the 231st District Court did not lack subject matter jurisdiction over this cause when it rendered its judgment removing Kirby as sole managing conservator and making the Harrises and Joanie Chapman the joint managing conservators of Brent. Kirby's point of error one is overruled.

## THE RECUSAL ISSUES

We next address Kirby's claims relating to the recusal of Judge Catterton.

### *Grounds for Recusal*

In points of error two and three, Kirby argues that Judge Catterton erred in not recusing himself and that Judge Brotherton erred in finding there were no grounds requiring Judge Catterton's recusal. Kirby mainly bases her arguments regarding the recusal of Judge Catterton on the fact that State Senator Chris Harris, Brent's uncle, lent support to Judge Catterton's appointment to the bench and that the case was transferred in a "bizarre" manner to Judge Catterton's court, the 231st District Court. Kirby also asserts that the participation at trial of an attorney from Senator Harris' law firm amounted to Senator Harris' own personal participation in the trial. Further, Kirby argues that, had she known of Senator Harris' activities in supporting Judge Catterton's appointment, she would not have waived her right to a jury trial in this case.

■ All judges have the duty to sit and decide matters brought before them unless there is a basis for disqualification or recusal. *Rogers v. Bradley,* 909 S.W.2d 872, 879 (Tex. 1995); *Sun Oil Co. v. Whitaker,* 483 S.W.2d 808, 823–24 (Tex.1972); Tex.Code Jud.Conduct, Canon 3, pt. 3(B)(1) (1974), *reprinted in* Tex.Gov't Code, tit. 2, subtit. G.App. A judge shall recuse himself when his impar-

tiality might reasonably be questioned. Tex. R.Civ.P. 18b(2)(a).[5] Recently discussing the appropriate test regarding when impartiality can reasonably be questioned, Justice Enoch centered on how various state and federal courts reference, as a critical factor, the conduct of the judge, not the conduct of some third party, as the subject of examination. *Rogers,* 909 S.W.2d at 880–81. Recognizing that Texas courts have not articulated a clear standard for recusal, Justice Enoch noted that Texas decisions implicitly assume that it is the conduct of the judge that is in question and not the conduct of a third party. *Id.* at 881. He poses the question as whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial. *Id.* Accordingly, "[b]ecause this test requires courts to evaluate a motion to recuse from a disinterested observer's point of view, it seems best suited to achieve the primary purpose of Rule 18b(2)(a): avoiding the appearance of judicial bias. A standard that assumes the perspective of the judge, an attorney or a litigant involved in the case would not do much to satisfy the purpose of the rule." *Id.* at 882.

Utilizing this test, Kirby's extensive arguments that (1) the efforts of Senator Harris in supporting Judge Catterton's appointment; (2) the presence in the courtroom of an attorney from Senator Harris' law firm during the trial; and, (3) Kirby's self-serving statement that she would have secured a jury trial had she known her former brother-in-law, Senator Harris, was involved in Judge Catterton's appointment process, each exclude the critical factor of examining the conduct of the judge himself. They each adopt the perspective, and refer to the conduct, of third parties, which should not be imputed to Judge Catterton as a ground to question his impartiality.

5. In points of error two and three, Kirby also asserts that Judge Catterton had a personal bias or prejudice for the Harrises and Joanie Chapman. This is a ground for recusal provided by Tex.R.Civ.P. 18b(2)(b). However, Kirby chose to only argue the ground that Judge Catterton's impartiality might reasonably be questioned, which is a separate ground for recusal under Rule 18b(2)(a). Accordingly, we deem those portions of her points of error regarding personal bias or prejudice as waived. Tex.R.App.P. 74(f).

We agree with Justice Enoch that a "reasonable" person must be aware of the "facts of life" that surround the judiciary. *Id.* at 882 (quoting *Aguilar v. Anderson,* 855 S.W.2d 799, 805 (Tex.App.—El Paso 1993, writ denied) (Osborn, C.J., concurring)). Much like the "fact of life" that judges must stand for reelection and obtain contributions for their campaigns, another "fact of life" is that judges are appointed at times and legislators support judicial nominations. We reject the assertion that the fact that Senator Harris supported Judge Catterton's nomination and appointment to the bench would cast doubt in the mind of a reasonable person about the judge's ability to be fair and impartial, even in a case involving relatives of the Senator.

Only Kirby's argument regarding Judge Catterton's "bizarre" transfer of the case back to the 231st District Court examines the judge's actions. As analyzed under the first point of error, the 231st District Court never lost jurisdiction; therefore, any transfer back to the 231st District Court was a nonevent. Judge Catterton properly reasserted the 231st District Court as the proper court of continuing and exclusive jurisdiction over the case. His transfer order lent some certainty as to which court had proper jurisdiction. Although somewhat superfluous as a matter of law, it was not improper and certainly not "bizarre." In this regard, the conduct of Judge Catterton did not rise to the level where a reasonable person would doubt the judge's impartiality.

We agree with Justice Enoch's belief that "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Rogers,* 909 S.W.2d at 879 (quoting *United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir.1992)). In the present case, there existed no grounds for Judge Catterton's recusal; therefore, he did not err in not recusing himself, and Judge Brotherton did not err in finding that no grounds existed for Judge Catterton's recusal. Kirby's points of error two and three are overruled.

### Specific Findings of Fact and Conclusions of Law

In point of error four, Kirby claims it was error for Judge Brotherton not to adopt her Request for Amendment and Additional Findings of Fact and Conclusions of Law for the purposes of the recusal hearing.

The court shall file any additional findings and conclusions that are appropriate within ten days after a request is filed. TEX. R.CIV.P. 298. This rule has been interpreted to require additional findings and conclusions only when they relate to ultimate or controlling issues. *Dura–Stilts Co. v. Zachry,* 697 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). They are not required if they are evidentiary only. *Id.* If the record shows that the complaining party did not suffer injury, the failure to make such additional findings does not require reversal. *Tamez v. Tamez,* 822 S.W.2d 688, 692 (Tex. App.—Corpus Christi 1991, writ denied); *Rathmell v. Morrison,* 732 S.W.2d 6, 19 (Tex. App.—Houston [14th Dist.] 1987, no writ). Where refusal does not prevent the adequate presentation of the matter being complained of on appeal, no reversible error has occurred. *Tamez,* 822 S.W.2d at 693; *Huber v. Buder,* 434 S.W.2d 177, 181 (Tex.Civ.App.— Fort Worth 1968, writ ref'd n.r.e.). If the appellant requests findings directly contrary to, or inconsistent with, the original findings, the court need not make those requested findings. *Tamez,* 822 S.W.2d at 693. A trial court may properly refuse requested additional findings of fact and conclusions of law where they are either already adequately covered by the court's findings and conclusions, or were not material and necessary. *Baptist Memorial Hosp. Sys. v. Bashara,* 685 S.W.2d 352, 355 (Tex.App.—San Antonio 1984), *aff'd,* 685 S.W.2d 307 (Tex.1985). Further, if the requested findings will not result in a different judgment, those findings need not be made. *Tamez,* 822 S.W.2d at 693; *Shelby Int'l, Inc. v. Wiener,* 563 S.W.2d 324, 328 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

Kirby's requested findings and conclusions were adequately covered by Judge Brotherton's findings and conclusions. Many were merely evidentiary, contrary to the court's

findings, and they were not material and necessary. Nothing incident to Judge Brotherton's refusal to adopt Kirby's requested findings and conclusions prevented an adequate presentation of any matter on appeal. This is particularly apparent since a full and complete Statement of Facts was made a part of the record on appeal. *See Huber,* 434 S.W.2d at 181. Additionally, although Kirby argues that her findings and conclusions should have been adopted, she fails to demonstrate how a different judgment would have resulted. Accordingly, Judge Brotherton did not err in not adopting Kirby's request. Point of error four is overruled.

In point of error five, Kirby argues that the evidence was insufficient to support Judge Brotherton's finding that Senator Harris' endorsement of Randy Catterton's appointment and confirmation was public and well known in the family bar community.

■ In reviewing a legal insufficiency point of error, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregard any evidence to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). Under such a point, we are limited to reviewing only the evidence that tends to support the finding. *Id.* If there is any evidence of probative force, that is, more than a scintilla of evidence that supports the finding, we must overrule the point, and uphold the finding. *Id.*

■ In reviewing a factual insufficiency point, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ). Under this type of point, we can set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Otis Elevator,* 749 S.W.2d at 923.

■ Senator Harris testified at the recusal hearing that, during the confirmation hearings, he introduced Judge Catterton to the Nominations Committee in the Texas Senate and told them that about 40 to 60 family law attorneys from Tarrant County had taken a bus to Austin to support Judge Catterton. Senator Harris also testified that he introduced these attorneys as a group and asked all the family lawyers from Tarrant County who had come to support Judge Catterton to stand up. Further, Senator Harris' testimony included that his actions in support of Judge Catterton were consistent with his understanding of the Tarrant County Family Bar Association's support of Judge Catterton. There was, therefore, sufficient evidence before the trial court to conclude that Senator Harris' endorsement of Judge Catterton's appointment and confirmation was public and well known in the family law bar. Point of error five is overruled.

■ In point of error six, Kirby complains that Judge Brotherton erred in finding that Kirby's motion to recuse was not brought in a timely and proper manner and any grounds for recusal were therefore waived. Rule 18a of the Rules of Civil Procedure provides that a motion to recuse must be filed at least ten days before trial. Tex. R.Civ.P. 18a. Rule 18a does not contemplate, however, the situation in which a party cannot know the basis of recusal until after trial has been completed. *Sun Exploration & Prod. Co. v. Jackson,* 783 S.W.2d 202, 206 (Tex.1989); *Martin v. State,* 876 S.W.2d 396, 397 (Tex.App.—Fort Worth 1994, no writ). In the present case, Kirby did not know of the potential grounds for recusal until after trial. Accordingly, she had not waived consideration of the issue. Regardless of the timeliness of Kirby's motion to recuse, Judge Brotherton heard the merits of Kirby's motion by allowing evidence and arguments regarding recusal. Our review of the record demonstrates that the dispositive issue for Judge Brotherton's determination was whether grounds existed for Judge Catterton's recusal from the case. Judge Brotherton concluded in seven of his eight conclusions of law that no grounds for recusal existed. Judge Brotherton's conclusions were dispositive of the controlling issue without regard to the timeliness of the motion to recuse. In light of the fact that the merits of

her motion were considered and ruled upon, we do not see how Kirby was injured by Judge Brotherton's error in including this conclusion of law. Additionally, Kirby has failed to demonstrate any injury or that the court's judgment would have been different with this conclusion omitted. We hold that the inclusion of this conclusion of law was not reversible error. Point of error six is overruled.

## ADMISSION OF EVIDENCE AT TRIAL

In point of error nine, Kirby claims that Judge Catterton abused his discretion during the trial on the merits of this case when he admitted evidence regarding Kirby's marriage to Julian Hernandez because that evidence was inadmissible and its admission probably caused the rendition of an improper judgment.

In order to determine the time-frame range of admissibility of evidence in this case, it is important to delineate the dates of the relevant orders modifying the parent-child relationship. This is so because it would be improper for the court to consider evidence presented at a prior hearing as grounds for determining issues in a subsequent hearing. *May v. May*, 829 S.W.2d 373, 376 (Tex.App.—Corpus Christi 1992, writ denied).

The initial divorce and decree was heard and signed on June 16, 1987. On June 28, 1991, the modification order granting the Harrises and Joanie Chapman possessory conservatorship of Brent was signed. The June 28, 1991 order is the one that was signed by the 325th District Court, which we determined under point of error one was not the court of proper jurisdiction and was, therefore, void as a matter of law. Also, it was during this hearing that the evidence concerning Kirby's marriage to Julian Hernandez was originally considered. The modification that is the subject of this appeal was heard on April 12, 1994 and the order was signed on June 7, 1994.

Because the modification order from the 325th District Court was void, the court of proper jurisdiction, the 231st District Court, was not limited to considering evidence only from June 28, 1991 forward. Accordingly, because the order to be modified was the June 16, 1987 divorce decree, it would not be improper to admit and consider evidence from the original decree in 1987 until the present in determining any modification affecting the parent-child relationship. Irrespective of this, it is evident from the record that because Judge Catterton believed the order being modified was the 1991 order, he made great effort to limit his consideration to post–1991 evidence.

While evidence of past misconduct or neglect may not of itself be sufficient to show present unfitness in a suit affecting the parent-child relationship, such evidence is permissible as an inference that a person's future conduct may be measured by her past conduct as related to the same or similar situation. *Id.* at 377. "Past is often prologue." *Thomas v. Thomas*, 852 S.W.2d 31, 36 (Tex.App.—Waco 1993, no writ); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex.App.—Waco 1992, no writ). Specifically regarding the evidence concerning Julian Hernandez, the record reflects that Judge Catterton gave an instruction to counsel that such evidence would have to be tied together to show a continuing course of conduct. The record as a whole indicates that evidence was adduced to adequately tie the situation with Hernandez to evidence of Kirby's subsequent conduct. We hold that, to the extent Judge Catterton may have considered such evidence in arriving at his findings, he did not err. Point of error nine is overruled.

## SUFFICIENCY OF THE EVIDENCE AT TRIAL

In points of error seven and eight, Kirby asserts that the evidence was insufficient to support the judgment removing her as sole managing conservator and naming Joanie Chapman and the Harrises as joint managing conservators of Brent.

### *Conservatorship*

A natural parent shall be appointed sole managing conservator unless the court finds that the appointment of the parent would not be in the best interest of the child because the appointment would significantly

impair the child's physical health or emotional development. TEX.FAM.CODE ANN. § 14.01 (Vernon Supp.1995).[6] The language of section 14.01(b)(1) creates a strong presumption in favor of parental custody and imposes a heavy burden on a nonparent. *Lewelling v. Lewelling,* 796 S.W.2d 164, 167 (Tex.1990). It is no longer adequate to offer only evidence that the nonparent would be a better custodian of the child; "the nonparent must affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would *significantly impair* the child, either physically or emotionally." *Id.* The nonparent must offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child. *Id.* "[T]he act of a parent in placing a child in an unstable environment is the very type of conduct that the Legislature contemplated would significantly impair the physical or emotional development of a child." *Id.*

### Standard of Review

In reviewing a legal sufficiency point, or "no evidence" point, we must consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Id.* at 166. If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.; Thomas,* 852 S.W.2d at 34. Under a factual sufficiency challenge, we must examine all of the evidence and determine whether the evidence is so weak that the court's finding is clearly wrong and unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

 In a nonjury case, the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. *Thomas,* 852 S.W.2d at 34. The court, as trier of fact, has several alternatives available when presented with conflicting evidence: It may believe one witness and disbelieve others; it may resolve inconsistencies in the testimony of any witness; it may accept lay testimony over that of experts. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986).

### Application to the Case at Bar

Because of the various interrelationships of Kirby's children and Joanie Chapman's child, Grady, Jr., the testimony at trial was often confusing and, at times, hotly disputed. The evidence showed that Janet Kirby is a 42-year old medical doctor in the field of radiology. She held the same job for twelve years and lived in the same home for eleven years. Kirby has three children by three different husbands. In 1991, Kirby was removed as sole managing conservator of her oldest son, Blake, in favor of Blake's father, Jim Hilliard. Kirby's relationship with Jim Hilliard is somewhat strained and confrontational. One particular confrontation concerned Kirby's method of using threats of medication, actually placebos, to control Blake's behavior. Kirby claims her use of placebos to control the behavior of her children is therapeutic, rather than disciplinary, and considers it appropriate because it works. Testimony at trial also indicated that the relationship between Kirby and Joanie Chapman is highly polarized and confrontational.

Following her divorce from Grady Harris, Sr., Kirby married Julian Hernandez. Julian engaged in psychotic behaviors that have ultimately resulted in hospitalization for his mental illness. Evidence showed that Julian was working in a fast-food establishment when Kirby met him, fell somewhat quickly in love with him, and married him in an attempt to educate him and rehabilitate him. Some of Julian's psychotic behaviors included laying his body on top of the children, standing naked before the children and "strumming" his penis as though it was a musical instrument, and waving a gun around the house in front of Kirby and the children. Kirby testified that Julian had engaged in "silly, but not bizarre" behavior. Kirby divorced Julian in 1991 and has filed a petition to terminate his parental rights concerning the child Brian Hernandez.

---

6. The former section 14.01(b)(1) is now encompassed in section 153.131(a) of the Family Code.

Kirby testified that since her divorce from Julian, she has had six intimate partners. Her testimony indicated one partner was a liaison in San Antonio, while another was a neighbor whom she was intimate with only once. One intimate partner was married at the time of the relationship, albeit going through a divorce. This particular man was a patient of Kirby's treating psychiatrist, who testified that the man had a bilateral abusive relationship with his wife, that there were severe confrontations between the man and his wife, and that the man sought therapy in order to control his anger and frustration well enough to approach his divorce. Evidence adduced at trial also indicated that Kirby met another partner by replying to a personal advertisement in *The Dallas Observer.*

The treating psychiatrist testified that he believed retaining Kirby as Brent's managing conservator would not significantly impair the child's physical health or emotional development. His testimony also included that Kirby has had a compulsive need for intimacy, a significant other, and a male relationship. His testimony indicated that Kirby had a habit of poor dating choices and male friends, being involved in reforming them or bettering them, and that this frequently does not serve Kirby's or her children's best interest. Aside from the psychiatrist's testimony that he believes Kirby is attempting to address this problem, there was no evidence that Kirby has improved her dating choices or that it is unlikely that she will continue such habits in the future. Kirby, however, denies she has a compulsive need for intimacy.

The treating psychiatrist had been seeing Brent for about one-and-a-half years. Evidence indicated Brent has attention deficit disorder and problems with aggressive conduct, which he sometimes acts out with other children. Brent had been prescribed to take Ritalin; however, this medication was eventually changed to Tofranil. Testimony at trial showed that, as Brent's therapy progressed, his attention deficit disorder symptoms were sometimes improved and sometimes worse. Brent's play therapist testified

that she agrees Brent has significant and serious emotional problems.

A central aspect of testimony at trial concerned particular behaviors Brent has engaged in. One babysitter for Brent testified that she believed Kirby to be a good parent. But, this babysitter's testimony also indicated that she had witnessed Brent exhibit violent aggressive behavior toward his younger half-brother Brian Hernandez. Such behavior included sitting on Brian's head, pulling his hair, kicking him, throwing objects at him, pushing Brian off of an extremely high place, and hitting Brian with a metal chain dog leash. Further, the babysitter had observed Brent do sexual things to Brian. She had seen Brent remove Brian's clothing and open Brian's buttocks, as well as seen Brent grab Brian's penis. Additionally, Brent has fondled his penis in the presence of his brothers, and he has displayed his buttocks and pulled his cheeks apart. Brent has also engaged in using abusive profanity. The babysitter's testimony included that she had frequently seen Brent harm Brian even when Kirby was present in the home. The babysitter indicated she voiced her concerns to Kirby on several occasions, and when she asked Kirby for guidance and direction for how to handle these situations, she received the reply to "do what I think I needed to do or just brush it off as child play."

Joanie Chapman testified that she had observed Brent on more than one occasion both masturbate and pull his buttocks apart, exposing his bottom. Chapman's testimony included that she observed Brent having a habitual obsession of keeping his hands in his pants. She indicated she has witnessed Brent chase Grady, Jr. and pull down his pants. Chapman also testified that she discussed these events with Kirby and was told "it was nothing," and that Chapman was "making too big of a deal out of them." A social worker associated with the treating psychiatrist testified that Joanie Chapman met with her and voiced concerns about Brent fondling Grady, Jr. in the bathtub and Brent telling Grady, Jr. that "it felt good if you put your penis in somebody's mouth," and that these concerns had also been voiced to Kirby.

Kirby's testimony indicated that she told the treating professionals that Brent was sexually normal. Kirby denied she ever had a conversation with Joanie Chapman regarding Brent's behavior in the bathtub while at Chapman's home. She further testified that the babysitters had indeed discussed Brent's sexual conduct with her, but that she attributed the concerns to hysteria created by Joanie Chapman. She believes all of the sexual conduct is hysteria induced by Chapman. Kirby does, however, attribute some of the problems Brent has to her own environment.

The treating psychiatrist testified that Brent needs as consistent and as unstimulating and as predictable an environment as he can get. His testimony included that Brent does have significant emotional problems and that the symptomology indicates problems which could include sexual abuse, neurological, and genetic situational problems.

█ We hold that the evidence adduced at trial was certainly some evidence, more than a scintilla, to support the judgment of the trial court. Therefore, the evidence was legally sufficient.

█ We reiterate that, in reviewing factual sufficiency points, this court is not a fact finder, and we cannot substitute our judgment for that of the trial court as fact finder even if a different finding could be reached on the evidence. *Brigham v. Brigham*, 863 S.W.2d 761, 762–63 (Tex.App.—Dallas 1993, writ denied). We note, again, that it was within the province of the trier of fact to weigh the evidence and assess the credibility of the witnesses. The trial court, as fact finder, was the judge of the facts proved and of reasonable inferences to be drawn therefrom. *Id.* We find that the evidence adduced at trial in this case supporting the judgment was not so weak as to be manifestly unjust and clearly wrong. *See May*, 829 S.W.2d at 378. We hold, therefore, that the evidence was not factually insufficient to support the judgment of the trial court. Kirby's points of error seven and eight are overruled.

## THE CHILD SUPPORT CLAIM

Kirby asserts in point of error ten that the trial court erred in ordering Kirby to pay $700 per month in child support. The basis of her argument is that she has already been ordered to turn over the social security payments received on Brent's behalf, which apparently are Brent's survivor benefits from his father's death. Kirby argues that her total obligation then becomes $1,500 per month, which exceeds 16% of her net resources per month. The basis of this assertion is that the social security payment for Brent should be considered a part of the child support paid, since absent a court order requiring it to be paid elsewhere, it would be paid to Kirby.

█ The payments received as survivor benefits on behalf of Brent constitute income for Brent and not for his guardian recipient. The trial court ordered Kirby, as the obligor, to pay a specific sum in support of Brent. The survivor benefits received by Brent are benefits received through the estate of his deceased father, who is not the court-ordered obligor in this case. We know of no authority, and have been cited to none, that would authorize Kirby to ascribe Brent's earnings as child support payments on her behalf. *See Garza v. Fleming*, 323 S.W.2d 152, 157 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). Further, the Dallas Court of Appeals has held that even the will beneficiaries of an obligor cannot receive credit for survivor benefits paid on behalf of the child. *Lake v. Lake*, 899 S.W.2d 737, 739–41 (Tex.App.—Dallas 1995, n.w.h.). The trial court, therefore, did not err in ordering Kirby to pay $700 per month as child support on behalf of Brent Harris. Point of error ten is overruled.

## CONCLUSION

In conclusion, we hold that the 231st District Court never lost jurisdiction of this case because the attempted transfer to the 325th District Court was not for an authorized reason under section 11.06 of the Family Code. Accordingly, it was not error for Judge Catterton to reassert the 231st District Court's jurisdiction. Further, Judge Catterton's actions did not rise to any level

that would cause a reasonable person to doubt his impartiality in this case. Likewise, we find that the actions of State Senator Chris Harris in supporting Judge Catterton's appointment to the 231st District Court would not cause a reasonable person to doubt the impartiality of Judge Catterton in this case. Consequently, we hold that Judge Brotherton did not err in finding that no grounds for Judge Catterton's recusal existed. Additionally, for the reasons stated above, Judge Brotherton did not err in not adopting Kirby's requested findings of fact and conclusions of law.

As a result of our holding that jurisdiction never left the 231st District Court, it was not error for the trial judge to consider evidence pre-dating the void modification order entered by the 325th District Court. Further, we find that the specific evidence complained of was sufficiently connected to evidence dating after the void modification which served to establish a continuing course of conduct. Additionally, we hold the evidence was both legally and factually sufficient to support the judgment of the trial court in this case in removing Kirby as sole managing conservator and making the Harrises and Joanie Chapman joint managing conservators of Brent.

Finally, because we find that survivorship benefits are income of the child, we hold that the trial court did not err in ordering Kirby to pay $700 per month in child support, regardless of the fact that she had previously been ordered to turn over social security benefits received on Brent's behalf amounting to $800 per month.

The judgment of the trial court is affirmed.