**Arthur M. HANSEN and Jan W. Hansen, Appellants,**

v.

**JP MORGAN CHASE BANK, N.A. as Independent Executor of the Estate of Jeanne Stratton Hansen, Deceased, and Lisa H. Cramer, Appellees.**

No. 05–09–01001–CV.

Court of Appeals of Texas, Dallas.

June 13, 2011.

---

Harvey G. Joseph, Law Offices of Harvey G. Joseph, Dallas, Bob Joe Shelton, Fort Worth, for Appellant.

John J. Little, Little, Pederson & Frankhauser, L.L.P., Scott D. Weber, Calloway, Norris, Burdette & Weber, Dallas, for Appellee.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

This is a suit for declaratory judgment. In its final judgment, the trial court ordered the attorneys' fees of plaintiff JP Morgan Chase Bank, N.A. and defendant Lisa H. Cramer to be paid by defendants Arthur M. Hansen and Jan W. Hansen individually, or from Arthur M. Hansen's share of the estate of Jeanne Stratton Hansen, deceased. The Hansens raise two issues on appeal, arguing (1) that the trial court should have dismissed the case as moot and (2) that their post-trial motion to recuse or disqualify the trial judge was erroneously denied. We affirm.

## I. BACKGROUND

### A. Facts

This case arises from the administration of the estate of Jeanne Stratton Hansen, deceased. Decedent's will made appellee JP Morgan Chase Bank, N.A. ("Chase") the executor of her estate. Decedent was survived by her son, appellant Arthur M. "Mark" Hansen, and her daughter, appellee Lisa H. Cramer. Appellant Jan W. Hansen is the wife of Mark Hansen. We will refer to appellants as "the Hansens."

Decedent's estate included a house located in Richardson, Texas. Chase put the house on the market. In early December 2007, Chase received offers to buy the house from both the Hansens and a third party named Adam Moore. Chase accepted an offer from Moore.

Chase prepared to close on the sale of the house to Moore. On or about December 28, 2007, counsel for the Hansens sent the title company a letter in which he objected to the sale and questioned Chase's authority to sell the house. Evidence adduced at trial indicated that the sale to Moore did not close on December 31, 2007, as scheduled, because the Hansens' objection caused the title company to refuse to close. In February 2008, Moore advised Chase that he was ready, willing, and able to close the sale contract, and that he would sue for specific performance if the contract did not close within fifteen days.

### B. Procedural history

Chase filed this suit for declaratory judgment in March 2008. It joined the Hansens, Cramer, and Moore as defendants. Chase sought, among other things, a declaration that it had the authority to sell the house under the terms of dece-

dent's will and an award of attorneys' fees. Cramer answered with a general denial. In an amended answer, she requested that the court grant her an award of attorneys' fees from the Hansens and that the court assess any attorneys' fees incurred by Moore or the decedent's estate against the Hansens individually or against Mark Hansen's share of the estate. The case was set for trial on September 9, 2008.

In July 2008, Mark Hansen notified the title company by letter that "no objection is being made" to the sale of the house to Moore. That same month, Moore assigned to Mark Hansen his rights in the contract for sale of the house. The evidence at trial indicated that the sale of the house closed in mid-August 2008 and that the Hansens were the ultimate purchasers of the house. Chase amended its petition to drop its request for declaratory relief, but it continued to seek its attorneys' fees.

With trial approaching, Chase filed a motion to quash certain trial subpoenas served by the Hansens. The motion to quash was set for hearing on the morning of September 8, 2008—the day before trial. That morning, before the hearing, the Hansens filed a plea to the jurisdiction. In their plea to the jurisdiction, the Hansens contended that the case had become moot upon the closing of the sale of the house. The trial judge orally denied the Hansens' plea to the jurisdiction at the conclusion of the hearing on Chase's motion to quash, and she later signed an order denying the plea.

On September 9, 2008, the trial judge held a bench trial and took the matter under advisement. Several days later, the Hansens filed a motion for reconsideration of their plea to the jurisdiction. The record contains no written order disposing of that motion, but the record indicates that the trial court heard the motion in December 2008. In January 2009, the Hansens filed a motion to recuse or disqualify the trial judge. The trial judge referred the matter to the presiding judge of the administrative judicial district, who assigned a different judge to hear the motion to recuse. The visiting judge held a hearing and denied the motion to recuse.

In April 2009, the trial judge signed a final judgment awarding Chase and Cramer their attorneys' fees, to be paid by the Hansens or from Mark Hansen's share of decedent's estate. The judge later signed findings of fact and conclusions of law. The Hansens appealed. They raise two issues on appeal: (1) whether the trial judge erred by denying the Hansens' plea to the jurisdiction and (2) whether the visiting judge erred by denying the Hansens' motion to recuse or disqualify the trial judge.

## II. MOOTNESS

In their first issue, the Hansens argue that this lawsuit became moot before trial when the Hansens dropped their objections to the sale of the house or, alternatively, when the house was actually sold. They further contend that Chase's and Cramer's claims for attorneys' fees did not prevent the case from becoming moot. Because mootness implicates subject-matter jurisdiction, the Hansens argue that the trial court erred by denying their plea to the jurisdiction.

### A. Standard of review and the law of mootness

We review a trial court's order on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004); *City of Dallas v. Chicory Court Simpson Stuart, L.P.,* 271 S.W.3d 412, 416 (Tex.App.-Dallas 2008, pet. denied).

"A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman,* 159

S.W.3d 640, 642 (Tex.2005). "A case is not rendered moot simply because some of the issues become moot...." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding). "The mootness doctrine implicates subject matter jurisdiction." *City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex.App.-Dallas 2010, no pet.). "[W]hen a case becomes moot the only proper judgment is one dismissing the cause." *Polk v. Davidson*, 145 Tex. 200, 196 S.W.2d 632, 633 (1946); *see also Woodfield*, 305 S.W.3d at 416 ("If a case is moot, the appellate court is required to vacate any judgment or order in the trial court and dismiss the case.").

## B. Analysis

Chase and Cramer do not dispute that the substantive declaratory relief sought by Chase became moot once Chase sold the house. Indeed, after the house was sold, Chase amended its pleadings to drop its claims for substantive declaratory relief. However, Chase continued to seek to recover its attorneys' fees incurred in the case. Moreover, even before the house was sold, Cramer sought both to recover her attorneys' fees under the Declaratory Judgments Act and to have any attorneys' fees incurred by the estate and by Moore charged to the Hansens individually or charged to Mark Hansen's share of the estate rather than hers. The question presented is whether Chase's or Cramer's claims concerning attorneys' fees prevented this declaratory-judgment action from becoming moot when Chase sold the house.

■ Chase and Cramer sought attorneys' fees against the Hansens under the Declaratory Judgments Act, chapter 37 of the Texas Civil Practice and Remedies Code. The Act provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."

TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (West 2008). A party to a declaratory-judgment action need not prevail in order to recover an award of attorneys' fees. *Martin v. Cadle Co.*, 133 S.W.3d 897, 906–07 (Tex.App.-Dallas 2004, pet. denied); *accord City of Temple v. Taylor*, 268 S.W.3d 852, 858 (Tex.App.-Austin 2008, pet. denied).

### 1. Texas Supreme Court authorities

The Texas Supreme Court has decided three cases that address the question of whether an outstanding claim for attorneys' fees will prevent the dismissal of an otherwise moot case. The first is *Camarena v. Texas Employment Commission*, 754 S.W.2d 149 (Tex.1988). Camarena and others sued the Commission, seeking a declaratory judgment that a statute excluding most agricultural workers from the Texas Unemployment Compensation Act was unconstitutional. *Id.* at 150. The trial court granted Camarena the declaration he sought, but it denied his request for attorneys' fees based on sovereign immunity. *Id.* The legislature amended the statute to give farm workers phased-in unemployment coverage, and the trial court rendered an amended judgment holding the new statute constitutional. *Id.* The Commission appealed, contending that the case had become moot, and Camarena cross-appealed the denial of attorneys' fees. *Id.* The court of appeals held that the case was moot and that immunity barred Camarena's claim for fees. *Id.* at 150–51. The Texas Supreme Court, however, held that the claim for attorneys' fees was a live claim that prevented the case from becoming moot. *Id.* at 151. It further held that the fee claim was not barred because chapter 106 of the civil practice and remedies code waived sovereign immunity. *Id.* at 151–52. Thus, *Camarena* supports the proposition that a claim for attorneys' fees can prevent a case from becoming moot.

Next, the supreme court decided *Speer v. Presbyterian Children's Home & Service Agency,* 847 S.W.2d 227 (Tex.1993), a case heavily relied on by the Hansens in this appeal. In *Speer,* Speer sued the Agency under the Texas Commission on Human Rights Act for refusing to hire her as an adoption worker because of her religion. *Id.* at 228. She sought only declaratory and injunctive relief. *Id.* The trial court ruled for the Agency, this Court affirmed, and Speer appealed to the Texas Supreme Court. *Id.* While the case was pending in the supreme court, the Agency ceased offering adoption services and abolished the position for which Speer had applied. *Id.* The supreme court held that the case was therefore moot and had to be dismissed. *Id.* at 230. The court distinguished *Camarena,* holding that because Speer's declaratory and injunction claims had become moot, she could never be a prevailing party under the Texas Commission on Human Rights Act and therefore could never recover her attorneys' fees and costs. *Id.* at 229–30. The El Paso Court of Appeals subsequently elaborated on the distinction between *Camarena* and *Speer.* Citing *Camarena,* the court of appeals held that a claim for attorneys' fees can keep a declaratory-judgment case alive despite substantive mootness because a party does not have to prevail in order to recover its attorneys' fees under the Declaratory Judgments Act. *Labrado v. Cnty. of El Paso,* 132 S.W.3d 581, 589–91 (Tex. App.-El Paso 2004, no pet.). *Speer* was distinguishable because Speer sued under the Texas Commission on Human Rights Act, which required her to prevail in order to recover her attorneys' fees. *Id.* at 590. Because the mootness of her substantive TCHRA claim meant she could never prevail, a claim for fees could not keep her claim alive. *Id.* at 590–91.

Finally, in the *Allstate Insurance Co.* case, the supreme court reaffirmed that a dispute over attorneys' fees under the Declaratory Judgments Act is a "live controversy" even if the substance of the case becomes moot during its pendency. *Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 642 (Tex.2005). In that case, Hallman was sued for property damage. *Id.* at 641. Her liability insurer, Allstate, provided her with a defense under a reservation of rights but commenced a declaratory-judgment action against Hallman contesting coverage of the property-damage claim. *Id.* The trial court granted summary judgment for Allstate and denied both sides their attorneys' fees, but this Court reversed, held that the claim was covered, and remanded for consideration of Hallman's claim for attorneys' fees. *Id.* at 642. While the case was on further appeal to the Texas Supreme Court, Hallman won the underlying property-damage case, and Allstate disclaimed any intention of seeking to recoup from Hallman its costs of defending the underlying case. *Id.* The supreme court cited *Camarena* and held that Hallman's continuing claim for attorneys' fees kept the case from becoming moot. *Id.* at 643 ("Hallman's remaining interest in obtaining attorney's fees 'breathes life' into this appeal and prevents it from being moot."). Accordingly, the court proceeded to decide the merits of the coverage question because of the live attorneys' fees issue. *Id.* at 643–45. Thus, *Allstate Insurance Co.* confirms that a claim for attorneys' fees under the Declaratory Judgments Act will keep a case alive even if the request for substantive declaratory relief becomes moot.

**2. Application of the law to the facts**

■ We conclude that *Camarena* and *Allstate Insurance Co.* stand for the proposition that a case under the Declaratory Judgments Act remains a live controversy, even if all requests for substantive declaratory relief become moot during the action's

pendency, as long as a claim for attorneys' fees under the Act remains pending. *See Tex. Dep't of Transp. v. Tex. Weekly Advocate,* No. 03–09–00159–CV, 2010 WL 323075, at *3 (Tex.App.-Austin Jan. 29, 2010, no pet.) (mem. op.) ("An appeal from the grant or denial of attorney's fees, *at least with respect to a UDJA claim,* is usually a separate controversy and can persist even when the underlying controversy is moot.") (emphasis added) (citing *Allstate Insurance Co.* and *Camarena* in support). Thus, Chase's and Cramer's claims for attorneys' fees under the Declaratory Judgments Act kept this case from becoming moot even though the Hansens dropped their objection to the sale of the house and the house was actually sold. *Speer* does not apply to cases under the Declaratory Judgments Act, and the Hansens' reliance on *Speer* is thus misplaced.

In support of their mootness argument, the Hansens also rely on cases such as *MBM Financial Corp. v. Woodlands Operating Co., L.P.,* 292 S.W.3d 660 (Tex. 2009), and *City of Carrollton v. RIHR Inc.,* 308 S.W.3d 444 (Tex.App.-Dallas 2010, pet. denied). These cases are not on point. In each case, the appellate court concluded that a party could not use the Declaratory Judgments Act as a vehicle for recovering attorneys' fees when the declaratory-judgment claims merely duplicated other claims already before the trial court. *See MBM Fin. Corp.,* 292 S.W.3d at 669–71; *RIHR Inc.,* 308 S.W.3d at 454–55. The instant case, by contrast, was an action solely for declaratory judgment, so Chase's declaratory-judgment claims were not duplicative of any other claims. Accordingly, *MBM Financial Corp.* and similar cases are distinguishable.

The Hansens also rely on two other cases that predate *Allstate Insurance Co.* These cases are not persuasive. In *Ware v. Miller,* the Amarillo Court of Appeals held that a plaintiff's claim for declaratory judgment "was rendered moot" during its pendency, and it therefore vacated the trial court's judgment (which awarded plaintiff his attorneys' fees) and dismissed the appeal. 134 S.W.3d 381, 384–85 (Tex. App.-Amarillo 2003, pet. denied). It appears that the *Ware* court did not consider the possibility that the plaintiff's claim for fees under the Declaratory Judgments Act might have prevented the case from becoming moot. *See id.* In *Kenneth Leventhal & Co. v. Reeves,* Reeves sued the defendants for breach of contract and declaratory judgment, and he obtained a judgment awarding him no relief except for attorneys' fees. 978 S.W.2d 253, 256–57 (Tex.App.-Houston [14th Dist.] 1998, no pet.). The court of appeals reversed and rendered a take-nothing judgment against Reeves, holding that the judgment for fees could not be sustained under the Declaratory Judgments Act for two reasons. *Id.* at 258–60. First, Reeves's claim for declaratory judgment was duplicative of his claim for breach of contract, and so it could not enable him to recover fees that were otherwise not recoverable. *Id.* at 258–59. We agree with this reasoning. Second, the court concluded that Reeves's claim for declaratory relief had become moot during its pendency and therefore would not support an award of attorneys' fees to either side. *Id.* at 259–60. This reasoning is contrary to *Allstate Insurance Co.,* which is binding on us, and so we decline to follow *Reeves.*[1]

1. Neither side cited our recent opinion in *City of Richardson v. Gordon,* 316 S.W.3d 758 (Tex.App.-Dallas 2010, no pet.). In *Gordon,* we addressed a fact-specific issue concerning attorneys' fees in relation to the Declaratory Judgments Act and governmental immunity. We conclude that *Gordon* is limited to its facts and should not be construed beyond its application to the discrete facts of that case.

### 3. Conclusion

The trial court did not err by denying the Hansens' plea to the jurisdiction. We resolve the Hansens' first issue against them.

### III. Recusal

In their second issue, the Hansens argue that the visiting judge erred by denying their motion to recuse or disqualify the trial judge.

### A. Standard of review and the law of recusal

The substance of the Hansens' argument is that the trial judge was not impartial. This subject is covered by Texas Rule of Civil Procedure 18b(2), which provides that a judge shall recuse herself in any proceeding in which her impartiality "might reasonably be questioned" or in which she has "a personal bias or prejudice concerning the subject matter or a party." Tex.R. Civ. P. 18b(2)(a), (b). We review an order denying a motion to recuse for abuse of discretion. Tex.R. Civ. P. 18a(f); *Carmody v. State Farm Lloyds*, 184 S.W.3d 419, 420 (Tex.App.-Dallas 2006, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003).

The test for recusal under rule 18b(2) is "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." *Sears v. Olivarez*, 28 S.W.3d 611, 615 (Tex. App.-Corpus Christi 2000, order) (en banc) (internal quotations and citations omitted), *disp. on merits*, No. 13-00-344-CV, 2003 WL 22208326 (Tex.App.-Corpus Christi Sept. 25, 2003, pet. denied) (mem. op.); *accord In re F.A.R.*, No. 11-04-00014-CV, 2005 WL 181719, at *2 (Tex.App.-Eastland Jan. 13, 2005, no pet.) (mem. op.); *Kirby v. Chapman*, 917 S.W.2d 902, 908 (Tex.App.-Fort Worth 1996, no writ). " '[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and opinions the judge forms during a trial do not necessitate recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex.2001) (per curiam) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). " 'Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *Id.* (quoting *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147); *accord Rymer v. Lewis*, 206 S.W.3d 732, 736 (Tex.App.-Dallas 2006, no pet.). The Hansens also point out that the Code of Judicial Conduct requires a judge to be "patient, dignified and courteous" to lawyers and litigants when dealing with them in an official capacity. Tex.Code Jud. Conduct, Canon 3(B)(4), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B (West 2005).

Rule 18a requires a motion to recuse to be filed at least ten days before "the date set for trial or other hearing." Tex.R. Civ. P. 18a(a). Failure to comply with the ten-day rule bars any appellate complaint about the denial of a motion to recuse. *Petitt v. Laware*, 715 S.W.2d 688, 692 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). But courts have held that the ten-day requirement does not apply if a party cannot comply with it through no fault of his own. *Metzger v. Sebek*, 892 S.W.2d 20, 49 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *see also Hudson v. Tex. Children's Hosp.*, 177 S.W.3d 232, 235 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (noting that "[the] ten-day requirement of Rule 18a does not con-

template the situation in which a party cannot know the basis of the recusal until after a motion for recusal is no longer timely" (internal quotations and citations omitted)).

## B. Analysis

### 1. Judicial conduct

We consider first the Hansens' argument that the trial judge's judicial conduct during trial and during a subsequent hearing demonstrated bias or partiality. Because this alleged conduct occurred during and after trial, the Hansens could not have complied with the ten-day deadline with respect to that conduct, and we address the merits of their complaint.

■■■■ The Hansens contend that the judge made "demeaning remarks" to their attorney during the bench trial, required them to present their case in twenty-one minutes, and left the bench during their attorney's oral argument at the hearing on their motion to reconsider their plea to the jurisdiction. They do not cite any specific passages in the reporter's record to support their contention that the trial judge made demeaning remarks during the trial, and we are not obliged to search the record for them. *See Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.) (en banc) ("This court is not required to search the record for evidence supporting a litigant's position under particular points of error...."). As for the amount of trial time the Hansens were given, "a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Dow Chem. Co.,* 46 S.W.3d at 241. Because the entire trial lasted less than three and a half hours (including breaks) and considering that the Hansens could and did cross-examine other parties' witnesses before they presented their own case, we

cannot say that the length of time the judge allotted to their case displayed a deep-seated favoritism or antagonism that made fair judgment impossible.

■■■■ We also conclude that the judge's conduct during the hearing on the Hansens' motion for reconsideration was within the bounds of judicial propriety. Without presenting any context, the Hansens contend that the trial judge refused to listen to their attorney's argument and left the bench. The record, however, paints a different picture. The record shows that the judge repeatedly instructed counsel to proceed directly to the legal question of whether jurisdiction existed and not to dwell on the basic facts and procedural history of the case. The attorney disregarded the judge's direct and repeated instructions, and he again attempted to recite the facts of the case in detail. After he had gone on about the facts for some time, the trial judge stated as follows:

Okay, I'm going to go back in chambers so that you can gather your thoughts and then we'll address the issue you've raised today, when you're ready. But I'm not going to listen to some facts that were not developed, some which were, during the trial. I'm not going to address those facts today, I'm going .to address the legal issue you've raised and when you're ready to go forward on that legal issue, please notify my bailiff and I'll be right out.

Gentlemen, I apologize, we'll wait until he's ready to proceed on the motion before the Court.

After the recess, the hearing concluded with the following exchange:

MR. SHELTON: We're submitting it on the pleadings as filed and ask the Court, in open court, to recuse herself.

THE COURT: Submit your formal motion and I'll consider whether or not to recuse myself.

> In reading your motion, I thought there were some issues you might want to develop, legal issues[,] and I've afforded you the opportunity to do so[.] I'll certainly make a decision on your motion to recuse, once you file it, and then we'll see where we go from there.
>
> You're all excused.

We conclude that the record does not establish that the judge was gripped by deep-seated favoritism or antagonism that would make fair judgment impossible. *See Dow Chem. Co.*, 46 S.W.3d at 240. To the contrary, it shows that the trial judge exhibited considerable patience when the Hansens' attorney disregarded her repeated instructions to proceed directly to the legal basis for the motion for reconsideration. A trial judge may intervene to prevent an exercise that is a waste of time. *Id.* And even if the trial judge had shown " 'impatience, dissatisfaction, annoyance, and even anger,' " such expressions would not suffice to establish bias or partiality. *Id.* at 240 (quoting *Liteky*, 510 U.S. at 555–56, 114 S.Ct. 1147). The visiting judge did not abuse her discretion by concluding that the trial court's judicial conduct in this case did not justify recusal.

### 2. Other grounds for recusal

■ The Hansens also argue that recusal was required because appellee Cramer was represented by attorneys from the firm of Calloway, Norris, Burdette & Weber, PLLC, and the trial judge had relationships with other attorneys of that firm that called her impartiality into question. The Hansens did not timely assert this ground in a motion to recuse filed at least ten days before the relevant trial or hearing, as required by Rule 18a(a). Although the Hansens' attorney stated during argument at the hearing of their motion to recuse that the connections between the trial judge and the Calloway firm were unknown to him when he began representing the Hansens, the Hansens presented no evidence that they could not have known the facts in time to present their motion in a timely way. We conclude that the Hansens are barred from relying on these potential grounds for recusal because they failed to comply with the ten-day rule. *See* TEX.R. CIV. P. 18a(a); *see also Barron v. State*, 108 S.W.3d 379, 382 (Tex.App.-Tyler 2003, no pet.) ("[A] party's failure to obey the ten-day notice provision of Rule 18a(a) bars any complaint on appeal of the denial of the motion to recuse."); *Waste Water, Inc. v. Alpha Finishing & Developing Corp.*, 874 S.W.2d 940, 944 (Tex.App.-Houston [14th Dist.] 1994, no writ) ("Where a party fails to comply with [the ten-day rule], he waives his right to complain of a judge's failure to recuse himself.").

■ Alternatively, even if the merits of these grounds are properly before us, we conclude that the visiting judge did not abuse her discretion. The applicable test is whether a reasonable member of the public, knowing all the facts, would have a reasonable doubt as to the trial judge's impartiality. *In re F.A.R.*, 2005 WL 181719, at *2.

The relevant background facts are these. Cramer was represented in the trial court by Scott Weber and John Norris of the law firm of Calloway, Norris, Burdette & Weber. R.W. Calloway is the senior member of that law firm. Calloway did not appear as counsel for Cramer, but he did attend and testify at the hearing of the Hansens' motion to recuse. The Hansens rely on three facts to support their argument for recusal. First, Calloway was the trial judge's campaign treasurer. Second, Calloway has served as a special judge for the trial judge.[2] And third, Calloway and oth-

---

2. The Hansens assert that the trial judge had    also appointed another member of the Callo-

er members of the Calloway firm have earned ad-litem fees through appointments by the trial judge.

We reject the Hansens' contentions regarding special-judge appointments and ad-litem appointments. As to the special-judge appointments, the record shows only that Calloway has served as a special judge in all three of the probate courts in Dallas County since the 1970s. As to ad-litem fees, the record shows that the trial judge sometimes appointed Calloway as an ad litem and that over twenty-five years he "more than likely" received over $63,000 in fees based on those appointments.[3] The record contains no details or contextual evidence about these appointments that would justify a conclusion that the trial judge was unfairly biased in favor of all members of the Calloway firm, including those who represented Cramer in this case.

With respect to the evidence that R.W. Calloway served as the trial judge's campaign treasurer, the *Kirby* case and the case of *Lueg v. Lueg*, 976 S.W.2d 308 (Tex.App.-Corpus Christi 1998, pet. denied), indicate that this fact is not enough to compel recusal. *Lueg* was a divorce case in which the husband hired a lawyer who was currently representing the trial judge in a civil matter and who had previously served as the judge's most recent campaign manager. *Id.* at 309, 311. Nevertheless, the wife's motion to recuse was denied, and that denial was upheld on appeal. *Id.* at 309–11. The court of appeals concluded that the attorney-client relationship, without more facts to flesh out the quality of that relationship, did not mandate recusal. *Id.* at 311. And it analogized the campaign-treasurer relationship to the issue of campaign contributions, concluding that neither situation was so indicative of partiality as to require recusal. *Id.*

In *Kirby*, a trial judge was appointed by the governor and began to preside over a pending divorce and child-custody case. 917 S.W.2d at 905–06. The mother of the child in question moved to recuse the trial judge because (1) the judge's appointment had been strongly promoted by a state senator who was the brother of the father of the child, and (2) a lawyer from the state senator's law firm participated in the trial. *Id.* at 908. The motion to recuse was denied, and the court of appeals found no abuse of discretion. The court of appeals observed that it is simply a "fact of life" that some judges are appointed with the support of state legislators. *Id.* at 909. It concluded that a reasonable person, being aware of that fact, would not doubt "the judge's ability to be fair and impartial, even in a case involving relatives" of the senator who had supported the judge's nomination. *Id.*

We agree with the analyses in *Lueg* and *Kirby*. A reasonable member of the public, understanding that Texas trial judges commonly rely on members of the bar for campaign assistance, would not necessarily conclude that the relationship between Calloway and the trial judge would translate into bias in favor of all attorneys at the Calloway firm. The visiting judge acted reasonably in concluding that the contacts between the trial judge and the Cal-

way firm as a special judge, but they cite no record evidence in support.

3. In their brief, the Hansens assert that the record contains evidence supporting some additional facts regarding ad-litem fees earned by the Calloway firm, but the visiting judge excluded that evidence. This evidence was made part of the record only on a bill of exception. Because the Hansens do not argue on appeal that the exclusion of the evidence was erroneous, we will not consider it. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577–78 (Tex.2006).

loway firm did not compel the trial judge to recuse herself.

We conclude that the visiting judge did not abuse her discretion by denying the Hansens' motion to recuse. We resolve the Hansens' second issue against them.

### IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.