ACCEPTED
04-14-00342-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/2/2015 9:39:12 AM
KEITH HOTTLE
CLERK

No. 04-14-00342-CV

IN THE FOURTH DISTRICT COURT OF APPEALS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/2/2015 9:39:12 AM
KEITH E. HOTTLE
Clerk

RICHARD A. RODRIGUEZ,

*Appellant,*

v.

JPMORGAN CHASE BANK, N.A.

*Appellee.*

Appealed from the 285th District Court,
Bexar County, Texas,
The Honorable Dick Alcala, Presiding

**BRIEF FOR APPELLEE**

Marcie L. Schout (Lead Counsel)
Texas State Bar No. 24027960
Wm. Lance Lewis
Texas State Bar No. 12314560
Gregory M. Sudbury
Texas State Bar No. 24033367
**QUILLING, SELANDER, LOWNDS,
   WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
mschout@qslwm.com
llewis@qslwm.com
gsudbury@qslwm.com
**ATTORNEYS FOR APPELLEE,
JPMORGAN CHASE BANK, N.A.
SUCCESSOR IN INTEREST TO FIRST
NATIONAL BANK OF CHICAGO, AS
TRUSTEE**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**

Richard A. Rodriguez

**Appellant's Counsel:**

R. Robert Willmann, Jr.
P.O. Box 460167
San Antonio, Texas 78246

**Appellee:**

JPMorgan Chase Bank, N.A.,
Successor in Interest to First National
Bank of Chicago, Trustee

**Appellee's Counsel:**

Marcie L. Schout
Wm. Lance Lewis
Gregory M. Sudbury
Quilling, Selander, Lownds,
    Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

i

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel ................................................................................i

Index of Authorities ................................................................................................iv

Statement of the Case ........................................................................................... viii

Statement Regarding Oral Argument .....................................................................ix

Issues Presented for Review .....................................................................................x

Statement of Facts ....................................................................................................1

Summary of the Argument........................................................................................4

Argument and Authorities.........................................................................................7

I.     JPMC's claim for judicial foreclosure was not barred by limitations.............7

        A.     The undisputed evidence demonstrated that the Original Counterclaim was timely filed. ..........................................................8

        B.     The First Amended Counterclaim related back to the filing of the Original Counterclaim....................................................11

        C.     None of the arguments raised and briefed by Rodriguez justify reversing the trial court's ruling on the limitations issue. ...................................................................................17

II.    The trial court did not abuse its discretion in admitting the payoff quote shown in Exhibit 24. ..........................................................................18

III.   The evidence was sufficient to support the jury's award of damages, including the calculation of accrued interest. ...............................................21

IV.   The trial court did not abuse its discretion in admitting JPMC's expert testimony regarding attorney's fees...............................................25

V.    It was not an abuse of discretion to deny Rodriguez's motion to recuse because there was no reasonable doubt that the judges were impartial. .......28

ii

VI.    Rodriguez's briefing is insufficient to preserve any complaints about the granting of JPMC's summary judgment, and even if preserved, summary judgment was proper.......................................................31

Prayer .........................................................................................................34

iii

# INDEX OF AUTHORITIES

**Page**

**C**ASES

*Aguero v. Ramirez*,
70 S.W.3d 372 (Tex. App.—Corpus Christi 2002, pet. denied) ............ 15, 16

*Almazan v. United Services Auto. Ass'n, Inc.*,
840 S.W.2d 776 (Tex. App.—San Antonio 1992, writ denied) .................... 16

*Alvarado v. Farah Mfg. Co.*,
830 S.W.2d 911 (Tex.1992) ...................................................................... 19

*Atchley v. NCNB Texas Nat. Bank*,
795 S.W.2d 336 (Tex. App.—Beaumont 1990, writ denied) ........................ 23

*Bowie National Bank v. Stevens*,
532 S.W.2d 67 (Tex. 1975) ......................................................................... 9

*Bus. Staffing, Inc. v. Viesca*,
394 S.W.3d 733 (Tex. App.—San Antonio 2012, no pet.) .......................... 22

*Cain v. Bank United of Texas, FSB*,
Case No. 14-95-00601-CV, 1997 WL 428054 (Tex. App.—
Houston [14th Dist.] July 31, 1997, pet. denied) ........................................... 9

*Colvin v. Texas Dow Employees Credit Union*,
No. 01-11-00342-CV, 2012 WL 5544950  (Tex. App.—
Houston [1st Dist.] Nov. 15, 2012, no pet.) ................................................ 25

*Cram Roofing Co., Inc. v. Parker*,
131 S.W.3d 84 (Tex. App.—San Antonio 2003, no pet.) ............................ 12

*Darpino v. T.D.C.J.-I.D.*,
No. 12-03-00021-CV, 2003 WL 22839250 (Tex. App.—Tyler
Nov. 26, 2003, no pet.) ......................................................................... 17, 18

*Dove v. Graham,*
358 S.W.3d 681 (Tex. App.—San Antonio 2011, pet. denied) .................... 32

iv

3671.2108 4823-1350-3009-v.1

*Dow Chem. Co. v. Francis*,
46 S.W.3d 237 (Tex. 2001) ...................................................................... 29, 30

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.3d 238 (Tex. 1985) .......................................................................20

*Dyer v. Cotton*,
333 S.W.3d 703 (Tex. App.—Houston [1st Dist.] 2010, no pet.).......... 19, 25

*ERI Consulting Eng'rs, Inc. v. Swinnea*,
318 S.W.3d 867 (Tex. 2010) .......................................................................31

*Gaal v. State*,
332 S.W.3d 448 (Tex. Crim. App. 2011) ......................................................29

*Hansen v. JP Morgan Chase Bank, N.A.*,
346 S.W.3d 769 (Tex. App.—Dallas 2011, no pet.) .................. 28, 29, 30, 31

*Holy Cross Church of God in Christ v. Wolff*,
44 S.W.3d 562 (Tex. 2001) ..........................................................................8

*Hughes v. Mahaney & Higgins*,
821 S.W.2d 154 (Tex.1991) ........................................................................10

*In re Blankenship*,
392 S.W.3d 249 (Tex. App. —San Antonio 2012, no pet.) ........................32

*In re Estate of Valdez*,
406 S.W.3d 228 (Tex. App.—San Antonio 2013, pet. denied) ....................10

*In re H.M.S.*,
349 S.W.3d 250 (Tex. App.—Dallas 2011, pet. denied) ....................... 28, 29

*Moreno v. Sterling Drug, Inc.*,
787 S.W.2d 348 (Tex.1990) ..........................................................................8

*Mortgage Electronic Registration Systems, Inc. v. Groves*,
No. 14-10-00090-CV, 2011 WL 1364070 (Tex. App.—Houston
Apr. 12, 2011, pet. denied) ................................................................. 32, 33

*Nw. Nat. County Mut. Ins. Co. v. Rodriguez*,
18 S.W.3d 718 (Tex. App.—San Antonio 2000, pet. denied) ......................19

v

3671.2108 4823-1350-3009-v.1

*Ogden v. Gibraltar Saving Assoc.*,
640 S.W.2d 232 (Tex. 1982) .................................................................9

*Pioneer Bldg. & Loan Ass'n v. Johnston*,
117 S.W.2d 556 (Tex. Civ. App.—Waco 1938, writ dism'd) .......................10

*Sandhu v. Pinglia Investments of Texas, L.L.C.*,
14-08-00184-CV, 2009 WL 1795032 (Tex. App.—Houston
[14th Dist.] June 25, 2009, pet. denied) ........................................................23

*Santiago v. Novastar Mortg., Inc.*,
443 S.W.3d 462 (Tex. App.—Dallas 2014, pet. filed)................................34

*Scott v. Commercial Services of Perry, Inc.*,
121 S.W.3d 26 (Tex. App.—Tyler 2003, pet. denied) .................................24

*Sharpe v. Lomas & Nettleton Fin. Corp.*,
601 S.W.2d 55 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) ..................23

*Shumway v. Horizon Credit Corp.,*
801 S.W.2d 890 (Tex. 1991) ........................................................................8

*Sierad v. Barnett,*
164 S.W.3d 471 (Tex. App.—Dallas 2005, no pet.) ....................................20

*Smith v. CDI Rental Equipment, Ltd.*,
310 S.W.3d 559 (Tex. App. –Tyler 2010, no pet.)......................................13

*Stanley v. CitiFinancial Mortgage Co., Inc.*,
121 S.W.3d 811 (Tex. App.—Beaumont 2003, pet. denied) ..........................9

*Thompson v. Chrysler First Bus. Credit Corp.*,
840 S.W.2d 25 (Tex. App.—Dallas 1992, no writ)......................................23

*Tittizer v. Union Gas Corp.*,
171 S.W.3d 857 (Tex. 2005) ........................................................................17

*Vela v. Wagner & Brown, Ltd.*,
203 S.W.3d 37 (Tex. App.—San Antonio 2006, no pet.) .............................19

*Walker v. Hanes*,
570 S.W.2d 534 (Tex. Civ. App.—Corpus Christi 1978, writ
ref'd n.r.e.) .................................................................................................10

3671.2108 4823-1350-3009-v.1

*Whittier v. Ocwen Loan Servicing, L.L.C.*,
13-20639, 2014 WL 6791382 (5th Cir. Dec. 3, 2014) ...................................34

*Williams v. Khalaf*,
802 S.W.2d 651 (Tex. 1990) ...................................................................15

*Williams v. Unifund CCR Partners Assignee of Citibank*,
264 S.W.3d 231 (Tex. App.—Houston [1st Dist.] 2008, no pet.).................24

## STATUTES

TEX. CIV. PRAC. & REM. CODE § 16.003...................................................14

TEX. CIV. PRAC. & REM. CODE § 16.004...................................................14

TEX. CIV. PRAC. & REM. CODE § 16.035(a) .......................................... 8, 13, 14, 15

TEX. CIV. PRAC. & REM. CODE § 16.068......................................... 12, 13, 14, 15, 16

## RULES

TEX. R. APP. P. 38.1(i).............................................................................32

TEX. R. CIV. P. 193.6(a) .......................................................................... 18, 19

vii

## STATEMENT OF THE CASE

Appellant Richard Rodriguez filed this suit over fourteen years ago seeking to delay a foreclosure of certain real property (the "Property"). 1 CR 1. Appellee JPMorgan Chase Bank, N.A., Successor in Interest to First National Bank of Chicago, Trustee, filed a counterclaim for breach of contract and sought judicial foreclosure. 1 CR 116, 291. The trial court granted summary judgment on all claims asserted by Rodriguez. 1 CR 414. Thereafter, the parties were re-aligned with JPMC as plaintiff, and the matter was set for a jury trial.

As part of the pre-trial proceedings, at the invitation of both parties, the trial court considered Rodriguez's argument that JPMC's claim for judicial foreclosure was barred by limitations in light of matters of which it could take judicial notice, and the trial court rejected the limitations defense. 2/10 RR 44:13-24; 2 CR 485. The case was then presented to a jury, and following trial, the jury found that Rodriguez had failed to comply with the loan agreement, his failure was not excused, and JPMC sustained $441,027.10 in damages as a result. 2 CR 417-419. Rodriguez filed a motion for judgment notwithstanding the verdict which was denied. 2 CR 426, 489. The trial court entered judgment in favor of JPMC, awarding JPMC $441,027.10, attorney's fees, costs and interest and ordering the Property be foreclosed. 2 CR 486-487. Rodriguez appealed. 2 CR 490.

3671.2108 4823-1350-3009-v.1

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not warranted in this case. Appellee does not believe that oral argument will significantly impact the decisional process of the Court. If however, the Court believes oral argument would be helpful and oral argument is held, Appellee desires to participate therein.

3671.2108 4823-1350-3009-v.1

# ISSUES PRESENTED FOR REVIEW

Issue 1:    Did the trial court correctly reject Rodriguez's argument that JPMC's judicial foreclosure claim was barred by limitations where (1) the original counterclaim was filed within four years of the effective acceleration of the loan, and (2) the amended petition for judicial foreclosure related back to the filing of the original counterclaim?

Issue 2:    Did the trial court abuse its discretion in admitting the payoff quote shown in Exhibit 24 where there was no showing that the alleged late disclosure of the payoff quote resulted in unfair surprise or unfair prejudice to Rodriguez?

Issue 3:    Was there more than a mere scintilla of evidence to support the jury's award of damages, including the interest owed under the terms of the note, where Rodriguez admitted the amount of the principal balance owed on the loan, the loan documents specified the applicable rate of interest, and testimony explained how the interest component of the damage model was calculated?

Issue 4:    Did the trial court abuse its discretion in allowing new counsel to substitute in as attorney's fee expert where there was no showing that the alleged late substitution of experts resulted in unfair surprise or unfair prejudice to Rodriguez?

Issue 5:    Was it an abuse of discretion to deny Rodriguez's motion to recuse where a letter to the presiding judge complaining about the length of time the case had been pending did not lead to a reasonable doubt about the impartiality of the judges assigned to this case?

Issue 6:    Is the conclusory briefing by Rodriguez sufficient to preserve his challenge to the validity of the summary judgment granted on his quiet title claim, and to the extent it is, did the trial court correctly grant summary judgment on Rodriguez's claims pertaining to JPMC's standing to foreclose where JPMC was in possession of the original note and there was a complete chain of assignments of the deed of trust?

3671.2108 4823-1350-3009-v.1

# STATEMENT OF FACTS

Underlying Facts

In December 1995, Rodriguez financed his purchase of certain real property (the "Property") through a loan evidenced by a note (the "Note") payable to First Texas Mortgage in the original principal amount of $147,100, which was secured by a deed of trust (the "Deed of Trust") encumbering the Property. PX 1, PX 2, PX 3. First Texas Mortgage, the originating lender, assigned the Deed of Trust to Old Kent Mortgage Company in December 1995. 1 CR 343. Old Kent then assigned the Deed of Trust to First National Bank of Chicago, as Trustee in February 1996. 1 CR 347. JPMC is the successor by merger to Bank One, the successor by merger to First National Bank of Chicago. 2/11 RR 9:24 to 10:12. 12. At trial, JPMC was in possession of the original Note. 2/11 RR 7:3-11.

Rodriguez defaulted on the Note in early 2000 by failing to make payments as they came due. 2/10 RR 113:1-4. On May 2, 2000, the servicer of the loan gave notice that Rodriguez was in default, provided a thirty day opportunity to cure that default, and warned that if the default was not cured, the balance due would be accelerated. PX 12. On July 7, 2000, foreclosure counsel sent a letter to Rodriguez accelerating the balance owed and scheduling the Property for foreclosure on August 1, 2000. PX 14. Subsequently, on August 11, 2000, a new notice of acceleration was issued and the Property was scheduled for foreclosure

1

on September 5, 2000. PX 17. That foreclosure sale did not proceed because Rodriguez filed this suit on September 5, 2000. 2/11 RR 23:1-5.

Rodriguez has not made any payments on the loan since early 2000. 2/10 RR 120:21-24. Despite that, as of the time of trial, no foreclosure had taken place and Rodriguez remained in possession of the Property. 2/10 RR 127:2-8. As of January 31, 2014, the total amount owed on the Note was $489,673.72. PX 24.

Procedural History

Rodriguez filed suit on September 5, 2000 seeking to enjoin foreclosure. 1 CR 1. JPMC filed a counterclaim against Rodriguez on August 11, 2004 asserting claims for breach of contract and declaratory judgment relating to Rodriguez's failure to pay amounts due on the Note. 1 CR 116. On April 20, 2012, JPMC filed its first amended counterclaim expressly seeking judicial foreclosure as a remedy for its previously asserted breach of contract claim. 1 CR 291.

In May 2012, JPMC filed an amended motion for summary judgment seeking a judgment that Rodriguez take nothing on his affirmative claims and also seeking judgment on JPMC's counterclaims. 1 CR 301. The motion was initially granted in full, disposing of the case. 1 CR 400. However, in November 2012, the original order was vacated and a new order was entered, granting summary judgment on all claims asserted by Rodriguez, but denying summary judgment on

2

the affirmative claims asserted by JPMC because the issue of Rodriguez's affirmative defense of limitations had not been addressed by JPMC's motion. 1 CR 413-414.

On November 18, 2013, Presiding Regional Judge Peeples assigned Senior Judge Dick Alcala to preside over this matter. 2 CR 96. The case was set for a December 13 scheduling conference at which time the parties were advised the case was set for trial on February 10, 2014. Also at that scheduling conference an order was signed allowing JPMC's current counsel to substitute in place of prior counsel. 2 CR 4.

On January 31, 2014, ten days before the trial setting, Rodriguez filed a motion to recuse Judge Alcala and Judge Peeples. 2 CR 13. The motion to recuse was premised on a letter sent to Judge Peeples which was docketed by the clerk on November 18, 2013. 2 CR 15. The letter was from Ruth Prokop, who lived near the Property, raising concerns about the length of time the case had been pending. 2 CR 1. The motion to recuse was referred to Judge Pat Priest who conducted a hearing on February 6, 2014. 2/6 RR 1. At the conclusion of the hearing, Judge Priest denied the motion to recuse. 2/6 RR 41:16-24.

Prior to trial, JPMC filed a motion pursuant to Rule 248 seeking a ruling on the question of law of whether JPMC's counterclaims were barred by limitations as asserted by Rodriguez. 2 CR 185. Rodriguez agreed that it was appropriate for the

3

trial court to rule on this issue prior to the beginning of the trial. 2/10 RR 20:18 to 24:12; 2/10 RR 31:13-19; 2/10 RR 34:21 to 35:22. The trial court then ruled that JPMC's claims were not barred by limitations. 2/10 RR 44:13-24.

Following a two day trial, the jury returned a verdict for JPMC, and the trial court entered a judgment in accordance with those findings on March 24, 2014. 2 CR 486. Rodriguez then filed this appeal. 2 CR 490.

## SUMMARY OF THE ARGUMENT

Despite admittedly not making a payment on the Note since early 2000, Rodriguez remains in possession of the Property and continues to contest the ability of JPMC to foreclose on the Deed of Trust. Given the unpreserved and utterly frivolous arguments raised by Rodriguez in his Amended Appellant's Brief, it is clear that this appeal is being used as just another tool to attempt to delay a foreclosure that Rodriguez has to this point been successful in avoiding for over fourteen years.

Rodriguez first contends that JPMC's claim for foreclosure is barred by limitations. However, as the trial court correctly concluded in the context of a Rule 248 motion before trial, JPMC's foreclosure claim is not barred by limitations as a matter of law. Under Texas law, the limitations period on foreclosure is four years from the time of acceleration. Here, the loan was accelerated on either July 7, 2000, or August 11, 2000. JPMC's original counterclaim was filed on

4

August 11, 2004. Given that the limitations period was tolled for 156 days between July 2000 and August 11, 2004, the original counterclaim was timely filed, regardless of which acceleration is treated as effective. JPMC's first amended counterclaim, which expressly sought the remedy of foreclosure, related back to the original counterclaim. As a result, JPMC's foreclosure claim was not barred by limitations.

Rodriguez also challenges the admission of a payoff quote and expert testimony regarding attorney's fees, contending that the payoff quote was not disclosed and the expert was not designated until less than thirty days before trial. However, in making this argument, Rodriguez applies the test from prior Rule 215(5), rather than the current and applicable Rule 193.6. Under the applicable test, the evidence should be admitted if there is good cause for the late disclosure, or there is a lack of unfair prejudice or unfair surprise. Rodriguez fails to apply the second prong of this test. The trial court did not abuse its discretion admitting the evidence when there was no unfair surprise or unfair prejudice.

The jury's award of damages was supported by legally sufficient evidence. Rodriguez challenges the evidence to support the award of interest under the Note. However, where the evidence included a detailed payoff quote, the Note providing the rate of interest, an admission by Rodriguez regarding the principal balance owed, and testimony from JPMC's corporate representative explaining the general

5

method of the calculation, there was more than a scintilla of evidence to support the jury's damage finding.

Rodriguez attempted to avoid the trial in this matter by filing a motion to recuse, premised on a letter sent to the Presiding Regional Judge regarding the length of time this case had been on file. However, nothing about that letter, or the subsequent rulings of or interactions with the assigned judges, would cause a reasonable member of the public at large, to have a reasonable doubt that the judge is actually impartial. As a result, the trial court did not abuse its discretion in denying the motion to recuse.

With regard to Rodriguez's final issue, he has waived any issue regarding the validity of the summary judgment granted to JPMC on his claim to quiet title because he has failed to adequately brief this issue, leaving JPMC and this Court to guess about what his complaint may be. In addition, assuming that Rodriguez is complaining about whether JPMC demonstrated its standing to foreclose, the summary judgment evidence demonstrated a complete chain of assignments of the Deed of Trust and revealed that JPMC was in possession of the original Note. Such evidence is sufficient to demonstrate JPMC's standing to foreclose as a matter of law.

3671.2108 4823-1350-3009, V.1

Because none of the issues raised by Rodriguez would justify reversing the Judgment, this litigation, which has spanned over fourteen years should be allowed to come to a conclusion.

## ARGUMENT AND AUTHORITIES

### I.   JPMC's claim for judicial foreclosure was not barred by limitations.

Rodriguez relied on the affirmative defense of limitations in an attempt to avoid JPMC's claim for judicial foreclosure.  Pursuant to Rule 248, JPMC filed a pre-trial brief requesting that the trial court apply the undisputed evidence and applicable Texas Rules of Civil Procedure to determine as a question of law whether JPMC's judicial foreclosure claim was barred by limitations.  2 CR 185. Rodriguez agreed that the limitations issue was one that should be determined by the trial court as a matter of law and was not an issue for submission to the jury. 2/10 RR 20:18 to 24:12; 2/10 RR 31:13-19; 2/10 RR 34:21 to 35:22.  After considering the undisputed evidence presented by the parties, the trial court concluded that JPMC's judicial foreclosure claim was timely filed as a matter of law and denied Rodriguez's defense premised on limitations.  2 CR 485.

Rodriguez states four issues related to his statute of limitations defense, but appears to assert a combined argument as to all four issues. *Appellant's Am. Br.*, p. 12-21.   Nevertheless, the undisputed evidence demonstrated that Rodriguez's limitation defense failed as a matter of law.

3671.2108 4823-1350-3009, V.1

**A. The undisputed evidence demonstrated that the Original Counterclaim was timely filed.**

The statute of limitations to conduct a foreclosure sale or file a claim for judicial foreclosure is four years after the note is accelerated. *Holy Cross Church of God in Christ v. Wolff*, 44 S.W.3d 562, 567 (Tex. 2001); Tex. Civ. Prac. & Rem. Code § 16.035(a). When a cause of action accrues is a question of law, not fact. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990).

Rodriguez references letters from March 31, 2000, April 14, 2000 and May 2, 2000 as demonstrating acceleration of the loan which started the four year limitations period. *Appellant's Am. Br.*, p. 15, 21-22. These letters are not any evidence that the loan was accelerated. "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross*, 44 S.W.3d at 566. "Both notices must be clear and unequivocal." *Id.* In determining whether a notice is a notice of acceleration, a "strict reading" is required and a notice should be "construed to avoid acceleration." *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991). The March and April 2000 letters memorialize forbearance plans that would allow Rodriguez to bring his loan current. PX 10; PX 11. There is no mention of acceleration anywhere in these letters. *Id.* The May 2, 2000 letter is a notice of default and opportunity to cure providing notice of the lender's intent to accelerate in the future if the default is not cured. 2 CR 246; 2/10 RR 40:16-18 (Rodriguez's counsel identifying the May 2

8

letter as a notice of intent to accelerate). Cases interpreting similar letters with language that the lender "will accelerate" the indebtedness if the default is not cured have held that such letters are notices of intent to accelerate and are not accelerations. *Ogden v. Gibraltar Saving Assoc.*, 640 S.W.2d 232, 233 (Tex. 1982); *see also Stanley v. CitiFinancial Mortgage Co., Inc.*, 121 S.W.3d 811 (Tex. App.—Beaumont 2003, pet. denied); *Cain v. Bank United of Texas, FSB,* Case No. 14-95-00601-CV, 1997 WL 428054 (Tex. App.—Houston [14th Dist.] July 31, 1997, pet. denied). The case cited by Rodriguez does not discuss whether similar letters result in acceleration and instead is concerned with a lender's purported waiver of the right to accelerate by failing to invoke acceleration despite default. *Bowie National Bank v. Stevens*, 532 S.W.2d 67, 68 (Tex. 1975). Accordingly, the letters from March 31, 2000, April 4, 2000 and May 2, 2000 are not evidence that the loan was accelerated at those times.

Instead, the evidence demonstrated that the loan was first accelerated on July 7, 2000. 2 CR 363. On August 11, 2000, a new notice of acceleration was issued. The Original Counterclaim was timely filed on August 11, 2004, within four years after that acceleration. 1 CR 116. Moreover, even if the July 7, 2000

9

acceleration is treated as the operative acceleration,[1] the application of tolling principles[2] results in the conclusion the Original Counterclaim was timely filed.

Under Texas law, "where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991) (quoting *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). This general proposition has been applied specifically to injunctions wrongfully enjoining a foreclosure sale. *Pioneer Bldg. & Loan Ass'n v. Johnston*, 117 S.W.2d 556, 559 (Tex. Civ. App.—Waco 1938, writ dism'd).

With no objection from Rodriguez, the trial court took judicial notice of various documents from the court file and noted that the court records prevented foreclosure for several lengthy periods between the July 7, 2000 acceleration and

---

[1] Rodriguez argues that JPMC waived the issue of whether the July 7, 2000 acceleration was abandoned. *Appellant's Am. Br.*, p. 21-22. While JPMC does not believe this is a correct statement of the law, JPMC does not address the abandonment argument and instead assumes that the July 7, 2000 acceleration remained effective. Even then, the application of tolling provisions results in the conclusion that the Original Counterclaim was filed within the applicable four-year statute of limitations.

[2] Rodriguez does not argue in his brief that the trial court erred in determining that tolling provisions applied to toll the statute of limitations, and he failed to address the tolling argument. As a result, Rodriguez has waived any argument contesting that acceleration was tolled. *In re Estate of Valdez*, 406 S.W.3d 228, 235 (Tex. App.—San Antonio 2013, pet. denied) (an issue that is not adequately briefed is waived). However, even assuming this issue was not waived, the trial court correctly applied tolling provisions.

3671.2108 4823-1350-3009, V.1

the filing of the Original Counterclaim on August 11, 2004.   2/10 RR 37. Specifically, the lender was prevented by Court authority from foreclosing for a total of 156 days as follows:

- September 5, 2000 Temporary Restraining Order (tolled 14 days) 2 CR 164-166;

- November 22, 2000 Agreement on Setting and Posting (tolled 41 days) 2 CR 379;

- June 1, 2001 Order (tolled 67 days) 2 CR 381-382; and

- October 31, 2001 Rule 11 Agreement (tolled 34 days) 2 CR 398-400.

Accordingly, applying tolling provisions, the Original Counterclaim filed on August 11, 2004 was timely, even if the July 7, 2000 acceleration (or the March 31, 2000,[3] April 14, 2000 or May 2, 2000 "accelerations" claimed by Rodriguez) remained effective.

### B.   The First Amended Counterclaim related back to the filing of the Original Counterclaim.

Because the Original Counterclaim was timely filed within the four year statute of limitations, the First Amended Counterclaim filed on April 20, 2012 (1 CR 291) relates back and was also timely filed.  The "relation back" doctrine is found in section 16.068 of the Texas Civil Practice and Remedies Code which

---

[3] Treating the March 31, 2000 letter as a notice of acceleration, the limitations period would have had to be tolled by 133 days for the August 11, 2004 filing to be timely.  The total amount of tolling was 156 days.

11

provides "if a filed pleading related to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." TEX. CIV. PRAC. & REM. CODE § 16.068. Texas courts have devised a two-prong test to determine whether an amended petition relates back to the original petition. *Cram Roofing Co., Inc. v. Parker*, 131 S.W.3d 84, 89 (Tex. App.—San Antonio 2003, no pet.). "First, the original cause of action asserted in the first pleading must have been timely filed; and second, the amended pleading which alleged new facts or grounds of liability or defense must not be based on a new, different, or distinct transaction or occurrence." *Id.* "Even if the amended petition contains new causes of action, the new causes of action are not barred by the statute of limitations unless they arise from a wholly different transaction." *Id.* (holding that the libel cause of action asserted in an amended pleading was timely when it related to the same transaction at issue in the original pleading).

Here, as discussed above, the Original Counterclaim was timely filed within the applicable four-year limitations period from the acceleration of the loan. In addition, the First Amended Counterclaim did not arise from a wholly different

12

transaction. The Original Counterclaim asserted claims for breach of contract and declaratory judgment relating to Rodriguez's failure to make payments on the loan. 1 CR 116-123. The factual allegations specifically reference the Note and Deed of Trust and the fact that Rodriguez had not made any payments on the loan since suit was filed in September 2000. 1 CR 116-117. The First Amended Counterclaim again asserted claims for breach of the Note and Deed of Trust. 2 CR 179-180.[4] As remedy for the breach, the First Amended Counterclaim sought both judicial and non-judicial foreclosure. 2 CR 393. As these claims related to the same facts and the same breach of contract, there can be no question that they did not arise from a "wholly different transaction." Indeed, Rodriguez does not argue that the claims in the First Amended Counterclaim arose out of a different transaction.

Instead, Rodriguez attempts to avoid the application of section 16.068 by noting that section 16.035, the statute of limitations applicable to foreclosure, requires an "explicit suit for foreclosure" and that a lawsuit must "expressly include words making it clear" it is a suit for recovery of real property.

---

[4] The counter-plaintiff in the Original Answer was First National Bank of Chicago. 1 CR 116. The counter-plaintiff in the First Amended Answer and Counterclaim was JPMorgan Chase Bank, N.A., successor in interest to First National Bank of Chicago, as Trustee. "In a merger, the privileges, powers, rights, and duties of the corporation are transferred to the surviving corporation and are there continued and preserved." *Smith v. CDI Rental Equipment, Ltd*., 310 S.W.3d 559, 565 (Tex. App. –Tyler 2010, no pet.). Thus, "the surviving corporation of a merger may prosecute the claims of . . . the merging entity." *Id.* Because JPMC is the successor in interest through merger to First National Bank of Chicago, as Trustee (2/11 RR 9:24 to 10:12), the First Amended Counterclaim was asserted in the correct name of the unchanged real party in interest.

3671.2108 4823-1350-3009, V.1

*Appellant's Am. Br.*, p.16, 19.  However, nothing about the language of section 16.035 or case law applying the relation back doctrine supports Rodriguez's argument.  The language of section 16.035 requires that "a person must bring suit for  . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues."  TEX. CIV. PRAC. & REM. CODE § 16.035(a).   The language in section 16.035 is similar to other statutes of limitations and does not amount to an exemption from the relation back principles dictated by section 16.068.

The language in the general four-year statute of limitations requires that "a person must bring suit on the following causes of action not later than four years after the day the cause of action accrues" and proceeds to list the specific actions such as debt, fraud and breach of fiduciary duty to which the section applies.  *Id.* at § 16.004.  The general two year statute of limitations is similarly worded requiring "a person must bring suit for trespass . . .  not later than two years after the day the cause of action accrues."  *Id.* at § 16.003.  The language in each of these sections specifically reference causes of action that must be brought within the specified time period.  Despite that language, section 16.068 is applied to these causes of action.  For example, section 16.004 requires that a person "must bring suit" for fraud within the four-year statute of limitations.  *Id.* at § 16.004.  The relation back principles of section 16.068 have been applied where the plaintiff initially timely

14

filed a breach of contract action and subsequently amended to assert what would have been a time barred fraud claim. *Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex. 1990) ("Although the fraud amended pleadings were filed almost six years after the transaction, § 16.068 saves the fraud cause of action from being barred by limitations because the earlier breach of contract pleading was timely and the new pleading related to the same transaction or occurrence.").

The language of section 16.035(a) does not require a different application of section 16.068. Indeed, if Rodriguez's argument was accepted, it would apply equally to all causes of action specifically mentioned in a statute of limitations and would render section 16.068 largely meaningless. As a result, Rodriguez's argument must be rejected and the relation back principles of section 16.068 apply to determine whether the judicial foreclosure claim expressly stated in the First Amended Counterclaim was timely.

The sole case cited by Rodriguez in his discussion of section 16.035 does not support a different conclusion. *Appellant's Am. Br.*, p. 19-20. In *Aguero*, the original petition to enforce the note was filed more than four years after, but within six years of when the cause of action to enforce the note or foreclose accrued. *Aguero v. Ramirez*, 70 S.W.3d 372, 374-75 (Tex. App.—Corpus Christi 2002, pet. denied). The borrower argued that because the right to foreclose was barred by a four year statute of limitations, the lender was also precluded from enforcing the

note despite the application of a six year statute of limitations to actions to enforce a note. *Id.* 373-74. While the Court recognized that rights to enforce a note and rights to enforce a deed of trust are distinct rights, it was not asked to and did not apply the relation back doctrine or statute to the time barred claim of foreclosure. Indeed, the relation back doctrine would not have applied in that situation because the foreclosure claim was barred by limitations at the time the original petition was filed. *Almazan v. United Services Auto. Ass'n, Inc.*, 840 S.W.2d 776, 778-79 (Tex. App.—San Antonio 1992, writ denied) (holding that the relation back doctrine only applies to claims that would have been timely if asserted in the original petition because the relation back doctrine is a tolling doctrine). Accordingly, *Aguero* has no relevance to the issue of whether the relation back doctrine would apply under the circumstances presented here where the judicial foreclosure claim would have been timely if included in the Original Counterclaim in August 2004.

The Original Counterclaim was timely filed within four years of either August 11, 2000 acceleration or the July 7, 2000 acceleration if tolling is applied as discussed above. The First Amended Counterclaim was based on the same transaction or occurrence. Indeed, it simply expressly sought the remedy of judicial foreclosure as a remedy for the breach of contract claim asserted in the Original Counterclaim. Under section 16.068, the claim for judicial foreclosure

16

was timely, and the trial court correctly denied the limitations defense asserted by Rodriguez.

## C. None of the arguments raised and briefed by Rodriguez justify reversing the trial court's ruling on the limitations issue.

Rodriguez now challenges the validity of the procedure used by the trial court in determining the limitations issue. *Appellant's Am. Br.¸* p. 17-19. However, before the trial court ruled adversely to him, Rodriguez invited the trial court to consider and rule on the limitations issue as a matter of law. Rodriguez's counsel repeatedly indicated he thought it was appropriate for the trial court to rule on the limitations issue as a matter of law after the parties submitted documents demonstrating the undisputed facts relevant to the limitations issue. 2/10 RR 20:18 to 24:12; 2/10 RR 31:13-19; 2/10 RR 34:21 to 35:22. Rodriguez cannot invite this alleged error and then complain after the trial court rules adversely to him. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) ("a party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as 'the invited error' doctrine.").

Moreover, the sole case cited by Rodriguez in support of his argument is irrelevant to the issue at hand. *Darpino v. T.D.C.J.-I.D.*, No. 12-03-00021-CV, 2003 WL 22839250 (Tex. App.—Tyler Nov. 26, 2003, no pet.). In *Darpino*, a pro se inmate filed suit against the Texas Department of Criminal Justice. *Id.* at *1. Prior to trial, the inmate filed a motion seeking production of documentary

17

evidence and seeking to subpoena witnesses. *Id.* The motion was not brought to the attention of the court until after opening statements had been given. *Id.* When the trial court directed the inmate to call his first witness, he advised that he had no witnesses and for the first time brought the pre-trial motion to the attention of the court. *Id.* On appeal, the inmate referred to Rule 248 without discussing it. The Court noted that Rule 248 did not apply in that situation because the record did not reveal any questions of law, exceptions to pleadings or other unresolved pending matters. *Id.* at *3. In addition, the matter was not raised until after opening arguments had been given. *Id.*

In contrast, here, the Rule 248 motion was utilized by JPMC to bring to the trial court's attention questions of law that could be resolved before the trial began based on undisputed facts and facts the trial court could take judicial notice of. These issues were taken up by the trial court, with the agreement of Rodriguez's counsel, before the trial began. Accordingly, there is no error in the trial court considering these questions of law in the context of a Rule 248 motion prior to the beginning of the trial.

## II.     The trial court did not abuse its discretion in admitting the payoff quote shown in Exhibit 24.

While Rodriguez quotes the language of Rule 193.6, he fails to accurately discuss the test that has been developed by the courts in applying Rule 193.6. *Appellant's Am. Br.*, p. 23-24. Under the test devised by the courts, if a party fails

18

to timely disclose evidence in accordance with discovery deadlines, the party may not offer the evidence unless "(1) good cause exists for the failure to timely make, amend, or supplement the response, <u>or</u> (2) the failure will not unfairly surprise or prejudice the other parties." *Dyer v. Cotton*, 333 S.W.3d 703, 717 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 913–14 (Tex.1992) (applying former Rule 215.5)) (emphasis added). It is important to note that the standard discussed by Rodriguez is based on prior Rule 215(5) which only permitted admission of the evidence on a showing of good cause. *Alvarado,* 830 S.W.2d at 913–14. The current Rule193.6 allows admission upon a showing of good cause, <u>or</u> lack of unfair surprise or unfair prejudice. TEX. R. CIV. P. 193.6(a). Thus, the statement of the test found in *Dyer* is the correct test to apply to this situation. *Nw. Nat. County Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 722, n.1 (Tex. App.—San Antonio 2000, pet. denied).

A trial court's decision to admit or exclude evidence under this test is reviewed for an abuse of discretion. *Dyer*, 333 S.W.3d at 717; *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 52 (Tex. App.—San Antonio 2006, no pet.). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. An Appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Sierad v. Barnett,*

19

164 S.W.3d 471, 481 (Tex. App.—Dallas 2005, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.3d 238, 241-42 (Tex. 1985).

The trial court did not abuse its discretion in admitting the updated payoff quote because there was no showing of unfair surprise or prejudice to Rodriguez. Documents filed with the trial court in June 2011 and re-filed in May 2012, included an Affidavit reflecting that as of May 2011, the total amount due on the loan was $394,853.86. 1 CR 185, 341. That sum was composed of $141,657.34 in principal, $131,402.18 in interest though May 31, 2011, $107,312.79 in escrow advances, $327.66 in late charges, $207.95 in property inspection fees and $13,945.94 in corporate advances. 1 CR 185, 341. The nature of a mortgage loan like the one at issue is that interest continues to accrue and escrow advances continue to be made and other expenses are incurred in connection with the loan. Exhibit 24 merely reflected an updated payoff quote with updated amounts for interest, escrow advances and other fees and expenses associated with the loan. PX 24. If JPMC was going to provide an updated payoff quote with figures close in time to the trial date, it is axiomatic that the payoff quote would be produced close in time to trial. Rodriguez impliedly admits that if Exhibit 24 had been produced thirty days before trial, he would not have had grounds to challenge the

20

admissibility of Exhibit 24. The fact that Exhibit 24 was produced 12 days[5] before trial instead of 30 days before trial as demanded by Rodriguez did not cause any unfair prejudice or unfair surprise. As a result, the trial court did not abuse its discretion in allowing the admission of Exhibit 24.

## III. The evidence was sufficient to support the jury's award of damages, including the calculation of accrued interest.

Rodriguez contends that there is no evidence to support the damages awarded by the jury because there is no explanation for how interest was calculated under the terms of the Note. *Appellant's Am. Br.*, p. 26. To the contrary, the evidence is legally sufficient to support the jury's award of damages based on the payoff quote, admissions of Rodriguez at trial, and explanation of the payoff quote provided at trial.

This Court has stated the standard of review applicable to a legal sufficiency or no evidence challenge as follows:

> In a legal sufficiency review, we view the evidence in the light most favorable to the trier of fact's findings and indulge every reasonable inference that supports them. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We will reverse a judgment on a legal sufficiency challenge if the record discloses (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact.

---

[5] Exhibit 24 was included in the summary judgment evidence filed in support of JPMC's Second Motion for Summary Judgment filed on January 29, 2014. 2 CR 516.

*Bus. Staffing, Inc. v. Viesca*, 394 S.W.3d 733, 742 (Tex. App.—San Antonio 2012, no pet.).

The damages awarded by the jury were supported by more than a mere scintilla of evidence. Rodriguez contends that there was not sufficient evidence to show the unpaid principal balance owed on the loan and accordingly, any calculation of accrued interest based on that unpaid principal balance is not supported by the evidence. However, Rodriguez himself testified that as of June 30, 2000 and August 7, 2000, the principal balance owed on the loan was $141,657.34, the amount shown in the payoff relied upon by JPMC. 2/10 RR 143:21 to 144:2; 2/10 RR 153:12 to 154:4. Given that Rodriguez agreed on the principal amount owed on the Note, there is more than a scintilla of evidence to support JPMC's calculation of the principal balance owed on the Note.

In addition, the method of calculating interest was set out in the Note itself, which provided that "interest will be charged on unpaid principal until the full amount of principal has been paid," and that such interest would be at a "yearly rate of 8.125%." PX 2. JPMC's corporate representative Richardra Winder testified that she reviewed documents and JPMC's electronic payment records to verify the amount owed on the loan. 2/11 RR 5:8 to 6:8; 2/11 RR 24:1-7. She further identified Exhibit 24 as a payoff quote generated by JPMC from its system records and identified the line item amounts for unpaid principal balance, accrued

22

interest and escrow advance balances and testified that the amounts shown in the payoff statement matched the amounts shown in JPMC's computerized records, including the computerized records from those who held or serviced the loan prior to JPMC. 2/11 RR 24:8-13; 2/11 RR 26:10 to 28:15; 2/11 RR 58:17 to 59:10; 2/11 RR 67: 9-16. She explained that interest was calculated at a rate of 8.125% per year and that the amount of interest due was a simple calculation of 8.125% per year multiplied by the principal balance extended out over the fourteen plus years the loan has been in default. 2/11 RR 60:11-23. That amounts to more than a mere scintilla of evidence to support the jury's determination of the amounts owed by Rodriguez on the loan.

In the summary judgment context, courts have repeatedly held that affidavits from bank employees reflecting a *statement* of the amount of principal and interest owed on a loan were not conclusory and were sufficient to establish the amount owed on a loan *as a matter of law*, even where the precise interest calculation was not shown. *Sharpe v. Lomas & Nettleton Fin. Corp.*, 601 S.W.2d 55, 57 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.); *see also Sandhu v. Pinglia Investments of Texas, L.L.C.*, 14-08-00184-CV, 2009 WL 1795032, at *5 (Tex. App.—Houston [14th Dist.] June 25, 2009, pet. denied); *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 29 (Tex. App.—Dallas 1992, no writ); *Atchley v. NCNB Texas Nat. Bank*, 795 S.W.2d 336, 337 (Tex. App.—Beaumont 1990, writ denied).

23

"A lender need not file detailed proof reflecting the calculations of the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment." *Scott v. Commercial Services of Perry, Inc.*, 121 S.W.3d 26, 29 (Tex. App.—Tyler 2003, pet. denied). If this evidence is not conclusory and is sufficient to entitle a lender to a judgment as a matter of law in the summary judgment context, the evidence adduced at trial in this matter is more than a mere scintilla of evidence to support JPMC's calculation of damages.

The cases cited by Rodriguez do not apply to these facts. In *Williams*, the Court held that the credit card company had not proved the terms of the credit agreement as a matter of law because it "did not produce the actual agreement or any other document that established the agreed terms, including the applicable interest rate or the method for determining the applicability and amount of finance charges." *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 237 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "The interest rate and other information reflected in the statements that were provided by Unifund are inconsistent, varying from 5% to 22.4%, and there is no indication of the agreement reached as to interest." *Id.* Here, the terms of the Note, including the applicable rate of interest was proved through the Note itself. PX 2.

24

The *Colvin* case is similarly unavailing. In *Colvin*, the credit card lender submitted an affidavit indicating that a credit card application with a $2,000 limit was approved. *Colvin v. Texas Dow Employees Credit Union*, No. 01-11-00342-CV, 2012 WL 5544950, at *1 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012, no pet.). The affidavit went on to state that the "principal balance due and payable is $12,444.30, plus interest at the rate of 7.75% from and after August 23, 2007." *Id.* The Court found that there was not sufficient evidence to support summary judgment because the evidence "does not explain how TDECU suffered damages in the amount to $12,344.30 when the credit card application on which it relies indicates a credit limit of $2,000." *Id.* at *6.

Because there is more than a mere scintilla of evidence to support JPMC's calculation of damages, the damages award to JPMC should be affirmed.

**IV.    The trial court did not abuse its discretion in admitting JPMC's expert testimony regarding attorney's fees.**

As was the case with the challenge to the admissibility of Exhibit 24, the trial court's decision to allow JPMC's attorney's fee expert to testify is reviewed for an abuse of discretion. *Dyer*, 333 S.W.3d at 717; *Vela*, 203 S.W.3d at 52. If a party fails to timely disclose evidence in accordance with discovery deadlines, the party may not offer the evidence unless "(1) good cause exists for the failure to timely make, amend, or supplement the response, or (2) the failure will not unfairly surprise or prejudice the other parties." *Dyer*, 333 S.W.3d at 717.

25

The trial court focused on the issue of unfair surprise or prejudice when the attorney's fee issue was raised pre-trial. Rodriguez complained that JPMC's current counsel were designated to testify regarding attorney's fees on January 27. 2/10 RR 12:21-23. The district court responded as follows:

> I realize that, but surprise is what I'm looking for. Given the nature of where this case has started from when I was assigned, what's – and the length of time this case has been pending, I kind of put it on a quick track, so everyone's sort of had to get on the ball and do with what they have at this present circumstance to get this matter concluded, and now – now, that's what I want to know is do you have – do you allege any surprise?

***

> THE COURT: If I'm not wrong, okay. But going back to the surprise.
>
> MR. WILLIMANN (counsel for Rodriguez): The surprise, Your Honor, has to do with the designation of Mr. Sudbury and Mr. Lewis as expert witnesses for attorneys fees. That was just done on January 27th, 13 days ago, so that is surprise. There's no way we can do discovery about their attorneys fees request in these 13 days. So that new – that untimely designation is a surprise as to those two counsel and their designation as expert witnesses for attorneys fees.
>
> MR. SUDBURY (counsel for JPMC): May I very briefly. Throughout the course of this case, the prior attorneys on behalf of Chase were designated. Defendant (Rodriguez) has known that Chase sought its attorneys fees in this case. All that was done was merely to switch the current attorneys for Chase to indicate it would be us instead of one of the prior attorneys. So Defendant Rodriguez has had essentially 14 years to do whatever discovery he wanted to do related to Chase's attorneys fees, Your Honor.
>
> MR. WILLMANN: Your Honor, it's 13 days, not 14 years.

26

MR. SUDBURY:  Your Honor, but there's always been attorneys designated to testify regarding attorneys fees.

2/10 RR 12:24 to 13:7; 2/10 RR 14:5 to 15:4.  Following that exchange, the trial court implicitly found there was not unfair surprise or prejudice and denied the pre-trial motion to exclude testimony on attorney's fees.  2/10 RR 15:5-6.  Rodriguez renewed his objection to the timeliness of the designation when the attorney's fee testimony was offered at trial.  2/11 RR 68:5-13.  The parties argued their positions as follows:

> MR. LEWIS (counsel for JPMC):  Judge, attorneys have always been designated to testify as on attorney's fees as of this case.  You know we substituted late last year and there was a scheduling order in place.  The scheduling said (sic) the trial.  We immediately updated our disclosures, listed Mr. Sudbury in place of the entire (prior) counsel because we had just taken over the case.  And, so, we would offer the same testimony that the prior counsel would offer.  We're just different lawyers.
>
> MR. WILLMANN:  The – the – the counsel—the current counsel entered in this case at the status conference on December the 13th, 2000 (sic), they were formally in the case.  These lawyers could have been designated as expert witnesses on attorney's fees well before the January 10th cutoff date to designate witnesses.
>
> In other words, they were in the case a month.  They could have designated these two attorneys as witnesses for attorneys fees in a timely manner.  But they did not.

2/11 RR 68:15 to 69:9.  The trial court then overruled the objection.

There is no indication of unfair surprise.  JPMC had been seeking attorney's fees since its counterclaim was filed on August 11, 2004 (1 CR 118) and that claim

27

was restated in its amended counterclaim on April 20, 2012 (1 CR 298-299). It was undisputed that JPMC's prior counsel had been designated as experts on attorney's fees. In addition, it is anticipated that attorney's fees will continue to be incurred in advance of the trial and during the trial. The amended designation was simply to allow JPMC's current attorneys, who would be participating in the trial, to offer the expert testimony to support the award of attorney's fees. Given those facts, the trial did not abuse its discretion in finding a lack of surprise or unfair prejudice and admitting the testimony on attorney's fees.

## V.     It was not an abuse of discretion to deny Rodriguez's motion to recuse because there was no reasonable doubt that the judges were impartial.

A trial court's decision to deny a motion to recuse is reviewed for an abuse of discretion. *In re H.M.S.*, 349 S.W.3d 250, 253 (Tex. App.—Dallas 2011, pet. denied). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 776 (Tex. App.—Dallas 2011, no pet.). This Court "examine[s] the totality of the circumstances and will not reverse an assigned judge's ruling if it is within the zone of reasonable disagreement." *In re H.M.S.*, 349 S.W.3d at 253.

Texas Rule of Civil Procedure 18b provides the grounds for recusal. Rodriguez asserts that the relevant grounds are that a judge should recuse when "the judge's impartiality might reasonably be questioned" or when "the judge has a

3671.2108 4823-1350-3009, V.1

personal bias or prejudice concerning the subject matter or a party." *Appellant's Am. Br.*, p. 36; TEX. R. CIV. P. 18b(b)(1), (2). "The test for recusal under rule 18b(2) is 'whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial.'" *Hansen*, 346 S.W.3d at 776. A lack of impartiality applies when it appears that the judge "harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011). In discussing the standards applicable to recusal, one Court has noted:

> The movant bears the burden of proving that recusal is warranted, and this burden is met only through a showing of bias or partiality to such an extent that the movant was deprived of a fair trial. *Id.* Judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality. *See Liteky v. U.S.,* 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). Furthermore, opinions formed by the judge based on facts introduced or events occurring in the course of proceedings do not constitute a valid basis for a recusal motion unless "they display a deep-seated favoritism or antagonism that would make a fair judgment impossible." *Id.* A judge's ordinary efforts at courtroom administration, even if stern or short-tempered, are immune. *Id.* at 556, 114 S. Ct. 1147.

*In re H.M.S.*, 349 S.W.3d at 253-54. "In short, a trial court has the inherent power to control the disposition of cases 'with economy of time and effort for itself, for counsel, and for litigants.'" *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). "A trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time" and

29

exercising the court's broad discretion to "maintain control and promote expedition" does not amount to a ground for recusal. *Id.* at 241. "Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Hansen*, 346 S.W.3d at 776.

Rodriguez premised his motion to recuse on a letter that was sent to the Presiding Judge of the Fourth Administrative Judicial Region in October 2013. 2 CR 1. Rodriguez argues that this letter was intended to influence and prejudice the court. *Appellant's Am. Br.*, p. 35. However, there is no showing in the record that this letter in fact had an improper influence over Judge Peeples or Judge Alcala. At the hearing on the motion to recuse, Rodriguez argued that the letter impacted how Judge Alcala chose to manage his docket in this matter, as demonstrated by the fact that he set the case for trial relatively quickly and refused to allow continuances of trial settings or hearings. 2/6 RR 31:20 to 35:23. These facts would not give rise to a "reasonable doubt that the judge is actually impartial." Instead, Judge Alcala's rulings applied equally to both parties. While the letter could potentially have impressed upon Judge Alcala the need to have this case resolved and off the Court's docket, that fact would have been equally apparent from the fact that this case had been pending for thirteen years by that

3671.2108 4823-1350-3009, V.1

point. A court's use of its broad discretion to manage its docket and promote expedition of cases before it does not serve as a grounds for recusal.

Nothing about Judicial Ethics Opinion 154 or the Code of Judicial Conduct warrants a finding that the trial court abused its discretion in denying the motion to recuse. Judicial Ethics Opinion 154 deals with a judge's ethical obligations when he is contacted by a litigant *ex parte*. *Appellant's Am. Br.*, p. 36-37. This is not a situation where a litigant engaged in *ex parte* communications. Instead, the letter at issue was from a neighbor of Rodriguez. 2 CR 1-2, 30. In addition, neither the Judicial Ethics Opinion nor the Code of Judicial Conduct set the standard for recusal. Instead, that standard is set by Rule 18b and cases interpreting that rule. Under those authorities, the standard for recusal is whether "a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial.'" *Hansen*, 346 S.W.3d at 776. There are no facts here that would lead to the questioning of the impartiality of the judges involved. As a result, it was not an abuse of discretion to deny the motion to recuse.

## VI.    Rodriguez's briefing is insufficient to preserve any complaints about the granting of JPMC's summary judgment, and even if preserved, summary judgment was proper.

"The Texas Rules of Appellate Procedure require adequate briefing." *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 880 (Tex. 2010); *see* TEX. R.

31

APP. P. 38.1. Specifically, Rule 38.1(i) requires that an appellant's brief contain clear and concise arguments, 'with appropriate citations to authorities and to the record.' TEX. R. APP. P. 38.1(i); *In re Blankenship,* 392 S.W.3d at 259. Failure to satisfy this requirement waives the issue on appeal. *See In re Blankenship,* 392 S.W.3d at 259; *Dove v. Graham,* 358 S.W.3d 681, 685 (Tex. App.—San Antonio 2011, pet. denied)." *In re Estate of Valdez,* 406 S.W.3d 228, 235 (Tex. App.—San Antonio 2013, pet. denied).

Rodriguez fails to offer clear and concise argument with appropriate citation to the record and authorities to explain why the trial court allegedly made an incorrect decision in granting summary judgment on his claim to quiet title. *Appellant's Am. Br.*, p. 38-39. It is impossible to discern from the brief what precise issue from the summary judgment is even being challenged. While Rodriguez does cite generally to *Mortgage Electronic Registration Systems, Inc. v. Groves,* there is no explanation of what proposition of law that case is cited for, how that case applies to the facts of this matter, or what summary judgment evidence is implicated in applying that case. Instead, Rodriguez simply provides that case cite and then cites to the pages in the record where the entirety of the summary judgment briefing is located. *Appellant's Am. Br.*, p. 39. This briefing is insufficient to preserve this issue for review, and therefore, it has been waived.

3671.2108 4823-1350-3009, V.1

Moreover, to the extent this issue is not waived, JPMC is left to speculate as to how *Groves* applies here. Given that Rodriguez cites this case in connection with his quiet title claim, presumably he is citing the case for the proposition that a quiet title claim in some instances does not require the claimant to show the strength of its own title, as in the situation where a claimant is seeking to clear a cloud on its title. *Mortgage Electronic Registration Systems, Inc. v. Groves*, No. 14-10-00090-CV, 2011 WL 1364070, at *3 (Tex. App.—Houston Apr. 12, 2011, pet. denied). However, in his response to the motion for summary judgment, Rodriguez never cites to *Groves* and does not discuss his quiet title claim. 1 CR 354-363. Instead, the response focuses entirely on addressing the counterclaim that had been asserted by JPMC. Accordingly, even if the Court were to indulge in scouring the record to ascertain Rodriguez's argument, the argument is not even present in the summary judgment record.

In addition, to the extent Rodriguez is purporting to challenge Chase's standing to foreclose based on the chain of assignments of the Deed of Trust,[6] the summary judgment evidence established Chase's standing to foreclose. Specifically, at the summary judgment hearing, the original Note was presented for the trial court's inspection. 1 CR 400. There was uncontroverted summary judgment evidence that Chase was the owner and holder of the Note. 1 CR 340.

---

[6] Rodriguez indicated that the pleadings raised the issue of whether liens had been properly transferred between the various holders. *Appellant's Am. Br.*, p. 38.

33

The original blue ink promissory note was also produced at trial. 2/11 RR 7:3-11. Case law is clear that if a party is the owner or holder of the Note, it has standing to foreclose. *Santiago v. Novastar Mortg., Inc.*, 443 S.W.3d 462, 478 (Tex. App.—Dallas 2014, pet. filed); *see also Whittier v. Ocwen Loan Servicing, L.L.C.*, 13-20639, 2014 WL 6791382, at *2 (5th Cir. Dec. 3, 2014). Accordingly, any alleged issue regarding the chain of assignments of the Deed of Trust, which has not been briefed in any detail by Rodriguez, is irrelevant to the issue of Chase's standing to foreclose.

Additionally, the evidence establishes a complete chain of assignments of the Deed of Trust. First Texas Mortgage, the originating lender, assigned the Deed of Trust to Old Kent Mortgage Company in December 1995. 1 CR 343. Old Kent then assigned the Deed of Trust to First National Bank of Chicago, as Trustee in February 1996. 1 CR 347. JPMC is the successor by merger to Bank One, the successor by merger to First National Bank of Chicago. 2/11 RR 9:24 to 10:12. 12. Accordingly, even if this issue had been briefed and preserved by Rodriguez, it does not serve as a basis for reversing the trial court's judgment.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, JPMorgan Chase Bank, N.A., Successor in Interest to First National Bank of Chicago, Trustee, prays that the Judgment be affirmed in all things.

34

Respectfully submitted,

_/s/ Marcie L. Schout_

Marcie L. Schout
Texas State Bar No. 24027960
Wm. Lance Lewis
Texas State Bar No. 12314560
**QUILLING, SELANDER, LOWNDS,
  WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
mschout@qslwm.com
llewis@qslwm.com

**ATTORNEYS FOR APPELLEE,
JPMORGAN CHASE BANK, N.A.,
SUCCESSOR IN INTEREST TO FIRST
NATIONAL BANK OF CHICAGO,
TRUSTEE**

## CERTIFICATE OF SERVICE

On February 2, 2015, I served a copy of this Brief for Appellee via electronic delivery upon the following:

R. Robert Willmann, Jr., Esq.
P.O. Box 460167
San Antonio, Texas 78246.

_/s/ Marcie L. Schout_

Wm. Lance Lewis / Marcie L. Schout

35

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 9,246 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

_/s/ Marcie L. Schout_
Marcie L. Schout

3671.2108 4823-1350-3009, V.1